In the matter of Election of St. Lawrence Steamboat Co.

Every presumption is in favor of possession in subordination to the title of the true owner. Whenever others cut on that tract, within the lines of the deeds through which defendants claim, they were trespassers, and gained no title by possession or otherwise.

The alleged remark of Benjamin F. Reeves, before he had a deed for the property, that he believed the Smith heirs were then the owners, was not admissible. The fact that Benjamin F. Reeves, after his purchase, attended a public sale, where the right of Ogden was offered, and procured another to bid, proves nothing against the defendant's right. The owner of land may offer to buy in an opposing claim, for the sake of peace and to quiet title, without thereby acknowledging any right in another.

The exception of ten acres from Mrs. Swain's allotment, noted on the commissioners' map, has no significance in this suit. Neither the 'map nor the partition papers locate the exception. Even if the exception had been located, it would not give plaintiff title thereto. If the ten acres be excepted from Mrs. Swain's allotment, they still belong to the Reeves heirs, and not to plaintiff. Plaintiff must recover, if at all, on the strength of his own title.

The verdict is against the evidence in the cause, against law, and the charge of the court.

Verdict set aside and new trial granted.

---

## IN THE MATTER OF THE ELECTION OF DIRECTORS OF THE ST. LAWRENCE STEAMBOAT CO.

1. Stockholders in a private corporation, in virtue of their interest in the managemant of its affairs, have a standing in court to test the regularity of an election of directors and the legality of the acts of inspectors of the election, in receiving or rejecting votes and in de-

claring the result. They are parties aggrieved within the meaning of the statute. *Rev., p.* 184, ¿ 44.

2. A stockholder who desires to vote on his stock by proxy, is bound to furnish his agent with such written evidence of the latter's right to act for him as will reasonably assure the inspectors that the agent is acting by the authority of his principal. But the power of attorney need not be in any prescribed form, nor be executed with any particular formalities. It is sufficient that it appear on its face to confer the requisite authority, and be free from all reasonable grounds of suspicion of its genuineness and *authenticity;* and the court, in reviewing the proceedings at an election, must be satisfied that the inspectors had reasonable grounds for rejecting the proxy.

3. Votes cast for a candidate who is ineligible for the office of director, will not be thrown away, so as to elect a candidate having a minority of votes, unless the electors casting such votes had knowledge of the fact on which the disqualification of the candidate for whom they voted rested, and also knew that the latter was, for that reason, disabled, by law, from holding the office.

4. Inspectors of an election for directors are required to decide upon the admissibility of the votes that are offered, but they have no power to pass upon the eligibility of the persons for whom votes are proposed to be cast. The question of eligibility is one that can be raised only in the courts.

5. The general rule is that the books of the corporation are the evidence of the persons who are entitled to the rights and privileges of stockholders in the management of the affairs of the corporation.

6. Section 47 of the Corporation act provides that no person shall be elected a director of a corporation issuing stock, unless he shall, at the time of the election, be a *bona fide* holder of some of its stock. *Held—*

1. That the books of the corporation are the only evidence as to who are the stockholders, and as such, are entitled to vote at elections.

2. That with respect to the qualifications of a director, the company's books are not conclusive. A person may be qualified to be a director, whose vote cannot be received at the election by reason of the transfer of stock to him not being entered on the books; and he may appear as a stockholder on the books, and still be disqualified for the office of director for reasons *aliunde.*

3. That if the stock was legally issued, and the legal title is in the stockholder, he is, *prima facie,* capable of being a director, and his right to be a director, in virtue of his legal title to such stock, can be impeached only by showing that title was put in him colorably, with a view to qualify him to be a director for some dishonest purpose, in furtherance of some fraudulent scheme touching the organization or control of the company.

7. In proceedings to inquire into an election of directors, under the forty-fourth section of the act concerning corporations, (*Rev.*, p. 184,) the court may either establish the election or set it aside and order a new election, or may, in its discretion, besides putting those out of office who were illegally returned as elected, make such an order as will put those in office as directors who would have been in office if the election had been properly conducted, if such relief appears to the court to be such as right and justice require.

8. If those candidates for whom the majority of the votes for directors was given or offered, were disqualified for the office, the court will only set aside the election and order a new election; but if they were qualified, and the election was, in all respects, fairly conducted, except in the rejection of legal votes tendered for them, the court will set aside the election and make an order putting them in office.

On application to set aside the election.

The St. Lawrence Steamboat Company is a corporation organized under the general corporation law of this state, by a certificate recorded in the Hudson county clerk's office February 17th, 1881, and filed in the office of the secretary of state February 21st, 1881.

On the 22d of March, 1882, a regular meeting of the stockholders was held at Jersey City, for the election of directors. The board consisted of seven directors, who were then to be elected to hold office for the ensuing year.

At the time of this election, the capital stock consisted of five hundred and ninety-three shares, of which number, one hundred and fifty shares were held by D. Mitchell McDonald.

Nine persons were voted for as directors, viz., W. R. Garrison, C. W. Copeland, H. P. Alden, Gustave Leve, J. T. Prince, Jr., L. M. Ferris, Jr., R. M. Ferris, D. M. McDonald and E. M. Jenkins.

The whole number of votes tendered at the election was five hundred and thirty-seven. In canvassing the votes, the inspectors rejected one hundred and fifty votes cast in McDonald's name, upon his stock, and the result certified by them was that Garrison, Copeland, Alden, Leve, Prince, L. M.

Ferris, Jr., and R. M. Ferris, were elected.   Of these, the five first named received, and were allowed by the inspectors, three hundred and seventy-seven votes each, and their election is conceded.   L. M. Ferris, Jr., and R. M. Ferris received two hundred and seventy-seven votes each, and the inspectors allowed and certified one hundred and fifty votes for McDonald and Jenkins.   They rejected the one hundred and fifty votes tendered upon the McDonald stock, which were offered to be cast for McDonald and Jenkins.   If these votes had been received and counted for McDonald and Jenkins, they would have been elected instead of L. M. Ferris, Jr., and R. M. Ferris.

The vote on McDonald's stock was tendered by Alden, in pursuance of the following proxy:

"Know all men by these presents, that I, Donald Mitchell McDonald, do hereby constitute and appoint Henry Parkhurst Alden my attorney and agent, for me and in my name, place and stead, to vote as my proxy, at the special meeting to be held February 18th, 1882, and at the annual meeting of the stockholders of St. Lawrence Steamboat Company, for the election of directors, according to the number of votes I should be entitled to vote if then personally present.

"In witness whereof, I have hereunto set my hand and seal, this          day of          , one thousand eight [L. S.]   hundred and eighty-two.

"D. MITCHELL McDONALD.

"Sealed and delivered in the presence
"W. A. J. G. McDONALD."

Alden, Leve and Prince, three of the stockholders, and also directors of the company, have prosecuted these proceedings, to test the legality of the election of L. M. Ferris, Jr., and R. M. Ferris.

Argued at February Term, 1882, before Justices DEPUE, VAN SYCKEL and PARKER.

For the application, *Leon Abbett.*

*Contra, Alexander T. McGill.*

The case was argued and decided orally, in April, 1882.

The opinion of the court was afterwards prepared by

DEPUE, J.   The act under which this application was made, provides that "it shall be the duty of the Supreme Court, upon the application of any person or persons, or a body corporate, who may be aggrieved by, or may complain of, any election, or any proceeding, act or matter, in or touching the same, reasonable notice having been given to the adverse party, or to those who are to be affected thereby, of such intended application, to proceed forthwith, and in a summary way, to hear the affidavits, proofs and allegations of the parties, or otherwise inquire into the matter or causes of complaint, and thereupon establish the election so complained of, or to order a new election, or make such order and give such relief in the premises as right and justice may appear to said Supreme Court to require." *Rev., p.* 184, § 44.

The stockholders of a corporation have an interest in the election of directors, who shall be the managers and agents of the corporation in the transaction of its business.   Inhabitants and tax-payers in a municipal corporation, in virtue of the interest they have in the municipal government, have a standing in court to test the legality of an election of officers of the municipal government.   *State, ex rel. Richards,* v. *Hammer,* 13 *Vroom* 435; *State, ex rel. Mitchell,* v. *Tolan,* 4 *Id.* 195.   By a parity of reason, stockholders in a private corporation, in virtue of their interest in the management of its affairs, have such an interest as will give them a standing in court to test the regularity of an election of directors, and the legality of the acts of inspectors of the election in receiving or rejecting votes and declaring the result.   They are parties aggrieved, within the meaning of the statute.

This application was properly made by Alden, Leve and

Prince, as stockholders. It also has the approval, of Mc-Donald and Jenkins, whose exclusion from office is complained of.

McDonald was the owner of one hundred and fifty shares of stock standing in his name. His right to one vote for each share, and to cast his votes by proxy, is undisputed. *Rev.,* *p.* 183, § 36. He resided in Toronto, Canada, and executed the power of attorney there, and sent it to Alden. He also, by letter, directed Alden to vote for himself (McDonald) and Jenkins as directors. The power of attorney was subscribed by a subscribing witness, but was not acknowledged or proved by him. Inspectors of election cannot reject a vote offered by proxy because the written proxy was not acknowledged or proved. If the proxy is regular in form, and apparently the act of the stockholder, the inspectors should receive the vote. *In re Cecil,* 36 *How. Pr.* 477. Indeed, the votes on McDonald's stock were not rejected by the inspectors on the ground that the proxy was witnessed by a subscribing witness, and was not verified by his affidavit. They testify that they were led to doubt the genuineness of the paper from the fact that a blank was left in it for the day and month of its date, and from the appearance of the paper and the manner in which it was offered.

A stockholder who desires to exercise his right to vote on his stock by proxy, is undoubtedly bound to furnish his agent with such written evidence of the latter's right to act for him as will reasonably assure the inspectors that the agent is acting by the authority of his principal. But the power of attorney need not be in any prescribed form, nor be executed with any particular formality. It is sufficient that it appear on its face to confer the requisite authority, and that it be free from all reasonable grounds of suspicion of its genuineness and authenticity; and the court, in reviewing the proceedings at an election, must be satisfied that the inspectors had reasonable grounds for rejecting the proxy.

It is clear that this proxy related to the election of March 22d, 1882. It was so understood by the inspectors. There

In the matter of Election of St. Lawrence Steamboat Co.

does not appear to have been any circumstance connected with the offer of the proxy, justly calculated to excite suspicion. Alden was a stockholder, and on that day was elected a director. The inspectors could easily have satisfied themselves of his identity and of his respectability. He appears to have acted in entire good faith. He exhibited to the stockholders then present, McDonald's letter of instruction, and informed the inspectors that he had such a letter. They did not call for the production of the letter. They simply required him to prove the execution of the proxy, and that he was not prepared to do. Before the inspectors rejected the proxy, they were bound to resort to all reasonable means of satisfying themselves of its authenticity. We think that the inspectors were not justified in rejecting the proxy, either by circumstances under which it was produced, or because of the blank in it for the day and month of its execution. The most solemn and formal instruments, such as deeds of conveyance, are sometimes executed with similar blanks; and the courts have never regarded such omissions as evidence that they were forged or fabricated.

If the votes on the McDonald stock be counted, McDonald and Jenkins had more votes than either L. M. Ferris, Jr., or R. M. Ferris. But it is contended that the election of one of these persons last named must be sustained on the ground that Jenkins was ineligible to the office of director. The effect of the ineligibility of a candidate for office, upon the result, depends entirely on the motive of the electors in casting their votes for him. Votes cast for a candidate who is disqualified for the office, will not be thrown away, so as to make the election fall on a candidate having a minority of votes, unless the electors casting such votes had knowledge of the fact on which the disqualification of the candidate for whom they voted, rested, and also knew that the latter was, for that reason, disabled by law from holding the office. *Regina* v. *Coaks*, 3 *E. & B.* 248; *Regina* v. *Tewkesbury*, *L. R.*, 3 *Q. B.* 628; *Drinkwater* v. *Deakin*, *L. R.*, 9 *C. P.* 626; *Etherington* v. *Wilson*, *L. R.*, 20 *Eq.* 606. If Jenkins was disqualified for

the office of director, the fact of his disqualification was unknown to the stockholders who voted for him.    The election of both L. M. Ferris, Jr., and R. M. Ferris must be set aside, without regard to the question of the ineligibility of one of the opposing candidates.

The power of the court, in this proceeding, to put in office the persons who would have been elected if all the legal votes tendered had been received and counted, as well as to put out the intruders, I think is clear.    The Supreme Court of New York, under a statute like ours, set aside an election of directors chosen by votes on stock belonging to the company, and declared the other persons elected who had a majority of the votes, excluding those illegally cast.    *Ex parte Desdoity*, 1 *Wend.* 98.    In a later case, the same court, where the votes illegally rejected would have elected other persons, set aside the election only, and refused to declare the directors elected who would have been successful if the rejected votes had been counted.    *In re Long Island R. R. Co.*, 19 *Wend.* 37.    In the case last referred to, seventeen hundred shares of the stock were not represented at the election, though the holders were qualified, and the holders of upwards of eleven thousand shares were disqualified, by reason of transfers within the thirty days.    The court properly refused to consider, as a finality in any way an election held under such circumstances, and ordered a new election; and it is not made entirely clear by the opinion that the court adopted the course of ordering another election, from any want of power to declare the persons elected who would have been elected if the votes illegally rejected had been received, or were constrained to do so by the circumstances under which the election was held.    In *Downing* v. *Potts*, 3 *Zab.* 66, the capital stock of the company was four thousand shares.    At the election, the successful ticket received only fifteen hundred and ninety-three votes that were legal, and the unsuccessful party received forty-six votes.    The number of votes illegally rejected was eighteen hundred and ninety-four.    The holders of four hundred and sixty-seven shares of stock did not vote

at the election. The unsuccessful ticket would not have had the votes of a majority of all the stock, if the votes rejected had been counted in its favor. Even in that event, as between the two contending parties, enough stock was unrepresented at the election to have changed the result. The court ordered a new election, without discussing its power to allow the votes illegally rejected, and thereupon to declare the result.

The language of the statute, on this subject, seems to me to be too clear to admit of a doubt. Any person who may be aggrieved by, or may complain " of any election, or of any proceeding, act or matter in or touching the same," may make application to the court; and the court is required "to proceed forthwith, and in a summary way, to hear the affidavits, proofs and allegations of the parties, or otherwise inquire into the matter or causes of complaint, and thereupon establish the election so complained of, or to order a new election, or make such order and give such relief in the premises as right and justice may appear to the said Supreme Court to require." The jurisdiction given to the court is over the election and over every proceeding, act or matter in or touching the same, that is complained of; and the power is given in the alternative, either to establish the election or to order a new election, or to make such order and give such relief in the premises as right and justice may require. A construction which restricts the power of the court simply to establishing the election or ordering a new election, involves the rejection of an important member of the sentence, expressed in the disjunctive, and plainly declaring that the court shall grant other relief than ordering a new election, if right and justice shall require it. This power is conferred on the court, which has, inherent in its jurisdiction, control, by means of the prerogative writs of *quo warranto* and *mandamus*, over elections held by private corporations; and the power is to be exercised in a summary manner. In many cases where, at an election for directors, legal votes have been rejected, which, if received, would have elected the contest-

ants, the only relief which would do complete justice would be to repair the wrong by putting the contestants in office. A new election might occasion vexatious delay, and possibly embarrassments in the affairs of the company, besides affording opportunity to those in office to increase the capital stock under recent legislation, and thus increase the number of voters, and obtain an unfair advantage at the new election, if one should be ordered. The act was designed to enable the court, in its discretion, to make such an order as would put parties in office who would have been there if the election had been properly conducted, if such relief appears to the court to be such as right and justice require.

In the case now before us, the election was regularly conducted in all respects, except in the rejection of the votes cast under the McDonald proxy. The whole number of shares of the company's stock was five hundred and ninety-three, and the holders of five hundred and thirty-seven of these shares were represented at the election. Including the one hundred and fifty shares of the McDonald stock, McDonald and Jenkins received three hundred votes, being more than a majority of all the stock issued. The corporation was organized as a navigation company. Its business is, to a large extent, transacted during the summer season, and the affidavits show that it is necessary to the welfare of the company that its directors be allowed to organize speedily, and elect officers for the ensuing year, and make arrangements for carrying on the business of the company. In view of the interests of stockholders, as well as the rights of those who should have been declared to be elected, the case is one in which the court, in ousting the intruders, should put in office those who would have been elected if the votes had been legally canvassed, provided they are qualified to hold the office.

The qualification of the unsuccessful candidates to hold the office has place in this controversy only as it may affect the order which shall be made. If they are disqualified for the office, the court will only set aside the election and order a new election.

McDonald's qualification for the office of director is undisputed. There can be no valid objection to instating him in office. Jenkins' qualification is denied on the ground that he was not, at the time of the election, a *bona fide* holder of any of the stock of the company.

Section 47 of the Corporation act provides that no person shall be elected a director of a corporation issuing stock, unless he shall, at the time of the election, be a *bona fide* holder of some of its stock; and by section 48, a director who shall cease to be a *bona fide* holder of the stock, shall thereupon cease to be a director. *Rev., p.* 185. On the company's books, Jenkins appeared to be the owner of ten shares of the stock, and a certificate for them had been issued in his name.

The general rule is, that the books of a corporation are the evidence of the persons who are entitled to the rights and privileges of stockholders in the management of the affairs of the corporation. With the single exception that stock really belonging to the corporation cannot, at any election for its directors, be voted upon directly or indirectly, (*Rev., p.* 184, § 43; *McNeely* v. *Woodruff*, 1 *Green* 352, 360,) the books of the corporation are the only evidence of who are the stockholders, and as such, are entitled to vote at elections. *Downing* v. *Potts*, 3 *Zab.* 66. Neither the inspector nor other stockholders can dispute the right to vote of one who appears by the company's books to be the holder of stock legally issued. In *Pender* v. *Lushington*, 6 *Ch. Div.* 70, the articles of association provided that every member should be entitled to one vote for every ten shares, but should not be entitled to more than one hundred votes in all, and that no member should vote at any general meeting unless he had been possessed of his shares for three months previously thereto. It was held that the register of shareholders was the only evidence by which the right to vote could be ascertained, and that no votes of shareholders appearing on the register and properly qualified, should be rejected on the ground that their shares had been transferred to them by other sharehold-

ers, for the purpose of increasing their own voting power, or with an object alleged to be adverse to the interests of the company, or on the ground that the holders were not beneficial owners of the shares. So, also, it is held that a' person has a right to vote on stock standing in his name as trustee for another, or on stock which he has pledged or hypothecated, if it be in his own name, on the company's books, and that inspectors of the election, in determining the qualifications of voters, have no authority to inquire whether the stockholder, who appears by the books to be a stockholder, is or not the real owner of the stock standing in his name. They must take the company's books as conclusive evidence of the qualification to vote. *Ex parte Willcocks*, 7 *Cow.* 402; *People* v. *Kipp*, 4 *Id.* 382, n.; *People* v. *Tibbets, Id.* 358; *In re Barker*, 6 *Wend.* 509; *In re Wheeler*, 2 *Abb. Prac.* (*N. S.*) 361; *In re Cecil*, 36 *How.* 477; *Boone on Corp.*, § 69.

But, with respect to the qualifications of a director, the company's books are not conclusive. A person may be qualified to be a director whose vote cannot be received at the election. He may be a *bona fide* holder of stock at that time, and yet be disqualified from voting on it by reason of the transfer to him not being entered on the books. He may appear as a stockholder on the books, and still, for reasons *aliunde*, be disqualified for the office of director. The question of the competency of a person for the directorship is one exclusively of judicial cognizance, over which the inspectors of the election have no jurisdiction. They have no means of making the necessary investigation on the subject, and no power to reject a competent vote because cast for a person who, in their judgment, is disqualified for the office. Whether a vote given for a disqualified candidate is so completely thrown away as to be entirely void, is a mixed question, made up of the fact of disqualification, and knowledge by the voter of the legal effect of the disqualification; and a decision by the inspectors to reject a vote on such grounds, if they had competent means of investigation, would, in all probability, lead to an erroneous result. *Regina* v. *Tewkesbury, supra,*

will illustrate.   Blizzard was a candidate for mayor, and also the returning officer, and consequently was disqualified for election to the office.   He had a majority of the votes.   The Court of Queen's Bench ousted him from the office, but refused to instate his competitor.   A decision by the inspectors, on the question of disqualification, though correct in fact, if followed up by rejecting the proffered votes, would necessarily have led to a wrong result.   Inspectors, in conducting an election, are required to determine the admissibility of the votes that may be offered, but have no power to pass upon the eligibility of the persons for whom they are proposed to be cast.   The question of eligibility is one that can be raised only in the courts.

Independent of the statute, a person might be a director of a corporation without being a stockholder.   The statute is guardedly expressed.   It prescribes as the qualification of a director, that he shall be a *bona fide* holder of stock.   A stockholder may have purchased stock with a view of becoming a director, or have obtained it by gift, or he may hold it upon a trust, and be qualified to be a director.   If the stock was legally issued, and is not the property of the corporation, and the legal title is in him, he is, *prima facie*, capable of being a director, and his right to be a director, in virtue of his legal title to such stock, can be impeached only by showing that title was put in him colorably, with a view to qualify him to be a director for some dishonest purpose, in furtherance of some fraudulent scheme touching the organization or control of the company, or to carry into effect some fraudulent arrangement with the company, such as was disclosed in *De Ruvigne's Case*, 5 *Ch. Div.* 307, 322.   In *Bartholomew* v. *Bentley*, 1 *Ohio St.* 37, the whole organization of the company was a fraud, and stock was issued gratuitously to certain persons, to qualify them as directors, to carry the fraud into execution.

The proof in relation to the stock held by Jenkins is that the stock was legally issued.   He subscribed for the stock and paid for it with money belonging to his wife, intend-

ing it as an investment for her, and to have the stock certificate in her name. By inadvertence, the certificate was made out in his name, and he returned it to the treasurer of the company, to have a new certificate made out, in the name of his wife. On account of the resignation of the treasurer, the change was not made. Jenkins testified that he afterwards learned that the affairs of the company were not in a prosperous condition, and resolved that it was not proper to saddle the stock on his wife, and that he consequently transferred the cost of it from her account to his own; and it appears that he applied to the treasurer, after the resignation of the latter, for a return of the certificate, informing him that he had decided to make no change in it. The stock remained in Jenkins' name, on the company's books. His name appeared on the list of stockholders prepared for the election of March 22d, and his vote upon this stock was received at that election without objection. He was then a *bona fide* holder of the stock, within the meaning of the statute, and qualified to be elected as director.

A rule should be entered, setting aside the election of L. M. Ferris, Jr., and R. M. Ferris, and ordering the admission of D. M. McDonald and E. M. Jenkins as directors.