## LEAVITT *v.* OXFORD AND GENEVA S. M. CO.

3   265
17  155

THE BOARD OF DIRECTORS OF A CORPORATION IS ITS DOMINANT BODY. The power of the directors is not a delegated authority in the sense in which the rule applies to agents with specified powers which can not be delegated; and when the transaction of the legitimate business of the company will be facilitated by the appointment of one or more of the board, such appointment may be made.

THE MAJOR PART OF A MAJORITY OF THE BOARD OF DIRECTORS OF A CORPORATION may bind the company on any matter within the powers of the board.

IN THE ABSENCE OF SOME STATUTE OR BY-LAW OF A COMPANY FIXING THE TIMES OF THE MEETINGS of its directors, and the character of the notice thereof to be given, all meetings of the directors are presumed to be regular of which due and legal notice was given, unless the contrary affirmatively appears.

STATUTE OF LIMITATIONS—RESOLUTION OF DIRECTORS, CONSTRUCTION OF.— A resolution which directs the president and secretary to execute the notes of the company for money loaned to it by the stockholders does not cover advances mutually made by the owners of the mining property of the company before its incorporation, for development, the parties making such advances afterwards becoming stockholders, and sharing in the improved value of the property; nor mutual and voluntary contributions of the stockholders made after incorporation, and for the purpose of developing the property; but does confer authority to execute notes for money loaned the recovery of which is barred by the statute of limitations. The defense of the statute of limitations is a personal privilege which may be waived by the debtor. The statute does not operate as a payment or extinguishment of the debt, but is a bar to the remedy only.

APPEAL from the third district court. The defendant had judgment; plaintiff appealed. The opinion states the facts.

*Sutherland & McBride,* for the appellant.

The defendant is a foreign corporation. It can only be sued here, by reason of its having property in this jurisdiction. This suit, in fact, is a proceeding *in rem,* because the person or body of the corporation has no existence outside of the state which created it: 34 N. Y. 208; 13 Pet. 521; 2 Black, 295; 20 Wall. 149; 96 U. S. 713. The defendant can

not plead the statute of limitations, which is a personal defense: 20 Wall. 149; 20 N. Y. 210; 5 Blatchf. 287; 10 Nev. 48.

But aside from this, the defendant, by its officers, when they were directed to give notes for all loans, were directed to give this note without reference to the defense of time. The note was given with full knowledge and means of knowledge, and it is too late to reconsider after a contract has been deliberately made. The defense of the statute is a personal one ; it could have been insisted upon or waived when the note was made : 18 Cal. 490 ; 41 Barb. 54 ; 27 How. Pr. 179 ; 18 Abb. Pr. 405 ; 9 Bosw. 631 ; 23 Cal. 16.

The expiration of the time of limitation on a debt does not operate as a payment or extinguishment of the claim, but simply bars the remedy, and the defense must be made at the proper time, or it is waived : 54 Cal. 298.

The defense to the statute was waived by giving the note, and by the resolution authorizing it : Comp. L., sec. 1126 ; Angell & Ames on Corp. sec. 237 et seq.; 1 Cush. 257 ; 6 Id. 342 ; 32 N. H. 299 ; Angell & Ames on Corp., sec. 244.

The defendant's strong point is that the defendant, being a director, could not act as such at a meeting of the board which did or authorized acts from which he might derive profit. The theory of this argument and position would prevent any director from being a stockholder. Every act of a director is for the benefit of the stockholders, or should be ; every director must be a stockholder, and if he does a beneficial act to all the stockholders, including himself, the act as to himself is void. This is the result of defendant's reasoning, and shows its utter unsoundness.

The jury were told that a " bare quorum " of the board had no authority to give a note to one of their own number. The plain rule of law is, that a majority of a quorum determine the action of the board, and the question of a " bare quorum " is immaterial—a quorum is as much the board as any number : 19 N. J. Eq. 404 ; 23 N. H. 555.

But the instructions, all taken together, clearly tell the jury that if the plaintiff voted for the resolution to pay the creditors who had advanced money to the company—no matter whether his vote affected the result or not—the note was unauthorized as to his claim.

Upon what theory ?  Did he defraud the company ?  They say, No; because payment to others not situated as he was was good; and if his claim was an honest one, why should other creditors be paid and the plaintiff not?  Is a party to lose his just claim because his duty is to guard the company's rights generally ?  The rule resorted to is for the protection of the company; not to enable it to defraud others.  It is intended to prevent its being involved in obligations injurious to it; not to enable it to escape its honest admitted liabilities. It is intended as a shield, not as a sword; a defense against fraud, not as a means of perpetrating it upon others.  It is a perversion of the entire purpose of the rule which prohibits a director from acting for the company in a case where his private interest is adverse to apply it to a case when no act of the director could have increased his own claim or the obligations of the company one iota.

If, with an indebtedness owing and a full treasury, a board of directors orders its treasurer to pay its debts, and one of its directors holds a promissory note, the order as to him would be void.

What is more common than for officers of a bank, who have large resources, to advance money to it to keep up its credit in time of embarrassment, and when the pressure is past, receive back their advances?  Are such transactions void simply by the fact of their being directors?  It would astonish the entire business community to learn that an officer or director, who, without fraud or intent to defraud, but simply because he is such officer, could not make such an advance, and if he did, could not have it returned, and that to pay it is fraud *per se.*  The contrary of this is the rule: 34 Ohio St. 450; 91 U. S. 144; 97 Id. 113.

*Arthur Brown,* for the respondent.

The resolution of August 2, 1880, does not, in its terms, profess to consummate a fraud; had it attempted that, it would have been void and null on its face.  But it only provides for "loans and liabilities;" that must mean legal, subsisting, actual, *bona fide,* honest liabilities, existing at that date.  More than half of the items included in this note were

not such; therefore this note could not be enforced as a note in the hands of Leavitt, himself a director. It was not within the power conferred or conferrable on the president and secretary. The facts which we have heretofore spoken of were not controverted or disputed on the trial, and no offer was made to disprove one of them, and most of these facts are testified to by the plaintiff himself.

I claim, on these facts alone, that the defendant was entitled to a direct charge that upon the undisputed facts, the plaintiff could recover nothing on this note.

The principle deducible from all the authorities is, that where a director has obtained an unjust or excessive advantage or promise, by aid of his position, he can not enforce such contract against the company of which he is trustee.

In *Gardiner* v. *Butler*, 30 N. J. Eq. 703 et seq., the court refused to permit a director to enforce a contract, although in the same case it adjudged that the director was entitled to receive an equal sum on *quantum meruit;* the contract was a nullity.

In *Butts* v. *Wood*, 37 N. Y. 318, the court held a director could not enforce even a just contract where it had been procured by a meeting of the board of which the attendance of that director was necessary to constitute a quorum. This decision is the same as request No. 4 on the part of the defendant: Record, p. 67.

This note, or any contract, would be void in the hands of Leavitt, a director, if he fraudulently added items to his account, or procured a note for the whole, fraudulent and honest items together, by virtue of his position as director, and he can recover nothing upon it: *Koehler* v. *Black River etc. Co.*, 2 Black, 715; *Covington R. R. Co.* v. *Bowler's Heirs*, 9 Bush, 468; *Jackson* v. *Ludeing*, 21 Wall. 616; *Bestor* v. *Wathen*, 60 Ill. 138.

This theory does not require, as counsel contend, that the plaintiff should forfeit his whole claim, but simply that he forfeits the contract upon which he seeks to recover; he can not recover on this document as a contract if he has put illegal items into it. He may sue on the merits beyond that, or on the consideration of the note independent of it. Neither does it prevent a director, as counsel claims at page 7, from

advancing money or acting for the benefit of the company, but simply provides that when he does so he shall not be permitted to take any unconscionable or dishonest advantage. The contract is voidable at the option of the company; we had nothing in this case in return, and we received nothing at the date of the note. A verdict for the defendant establishes nothing against the plaintiff upon his original causes of action; it simply says that the note procured by you as a director shall be as if no note had been given, and remands the director to the same remedy as he had before the note, and deprives him of none. It is a fundamental doctrine that a note given for a consideration in part illegal is altogether illegal: 12 Wall. 342, 349; 45 N. H. 520.

TWISS, J. :

This is an action upon a promissory note alleged to have been made and delivered by the defendant, a corporation created under the laws of Michigan, to the plaintiff. The following is a copy of the note:

"$7,984.12.                OFFICE OF THE
OXFORD AND GENEVA SILVER MINING COMPANY OF UTAH,
August 6, 1880.

"Thirty days after date, the Oxford and Geneva Silver Mining Company of Utah promise to pay to the order of Alvah E. Leavitt seven thousand nine hundred and eighty-four and thirteen one hundredths dollars, with interest at ten per cent per annum. Value received.

"OXFORD AND GENEVA SILVER MINING COMPANY OF UTAH.
"By J. B. SCOTT, President.
"D. G. HOLBROOK, Secretary."

The complaint alleges that the defendant was at and prior to the date of the note, and also at the commencement of this action, owner of real estate and property of other kinds in this territory, and had an agent in charge thereof.

The answer denies that defendant made the note; that J. B. Scott and D. G. Holbrook, or either of them, were authorized as agents or otherwise to make or deliver the note; and also denies that the defendant owed the plaintiff, at the date of the note, the sum of money for which it was given.

And·for a further or affirmative answer the defendant says that the plaintiff is a stockholder, director, and vice-president of the defendant corporation, and familiar with all of its resolutions. That the plaintiff, pretending and claiming that the defendant was indebted to him, prepared a statement of account showing such alleged indebtedness, which contained items claimed by plaintiff to have been advanced by him to the defendant, but which were in fact advanced by him to the firm of Scott & Brown before the organization of the defendant corporation on the twenty-eighth day of June, 1873. And also other items of account that were on the day of the date of the note barred by the statute of limitations of the state of Michigan, in which state the note was made and delivered, and that the same and other items were also barred by the statute of limitations of this territory; that the president and secretary, Scott and Holbrook, had no authority to include in the note the items barred by the statute. That said statement of account also contained items of account that were not advancements of money, but were moneys paid by plaintiff to the defendant in payment of an assessment made by the defendant upon three thousand two hundred and ten shares of capital stock held by the plaintiff in the defendant company, upon which forty cents per share were assessed on February 4, 1874, by a resolution of said company. That these items were incorporated in said note by mistake of Scott and Holbrook; that the items hereinbefore described as being included in said note were not an existing indebtedness against said corporation at the date of the note; and that said note was executed without authority, and is null and void.

The statutes of Michigan provide that the "stock, property, and affairs of such corporation shall be managed by not less than three nor more than nine directors, as the articles shall determine." The articles of association of the defendant corporation provide: "That there shall be seven directors, who shall have full power to manage the stock, property, and affairs of the corporation." At a meeting of the directors of the defendant, on August 2, 1880, four of them, constituting a quorum, were present, one of whom was the plaintiff; the following resolution was unanimously adopted:

" Resolved, that the president and secretary of this company are directed to make and deliver to the several stockholders who have loaned money to this company the notes of this company for such loans and liabilities, and that the same be made payable thirty days from date, with interest at ten per cent."

By the statutes of Michigan, and the defendant's articles of association, as well as by the common law, the defendant's board of directors is its dominant body—the executive power of the corporate entity, which acts solely by and through them in the prosecution or transaction of the business for which it was created.   Their power is not a delegated authority, in the sense in which the rule applies to agents or attorneys who have certain specified powers conferred upon them, but no others; and therefore have no power which they can delegate to others.   When the transaction of legitimate business, properly before a board of directors, can be facilitated by the appointment of one or more of their number for that purpose; they have power to make such appointment: *Burrell* v. *Nahant Bank,* 2 Met. 163; *Fleckner* v. *Bank of the United States,* 8 Wheat. 355; *Lester* v. *Webb,* 1 Allen, 34; *President of Northampton Bank* v. *Pepoon,* 11 Mass. 288.

The resolution of the board of directors did not create, nor was it intended to create, any liability on the part of the corporation; it simply made the president and secretary of the defendant, two of its directors, a committee for the special purpose of making and delivering the notes of the defendant to the several stockholders, holding the debts and liabilities therein described.   This act was within the scope of the power of the board of directors, and apparently in good faith. It was fair and just in terms and spirit to all parties—the corporation, the stockholders, and to the particular stockholders holding claims against the defendant.   Although it is solely and by the direct agency and under the supervision of the directors that the business of a corporation is transacted, yet they can only act within legally authorized limits; their unauthorized acts do not bind the corporation, and the same principle applies to their agents.   If Scott and Holbrook, in executing the trust thus imposed upon them, exceeded their authority, the corporation, their principal, is not bound by such unauthorized acts.

The plaintiff being one of. the four who constituted the meeting of the directors which adopted the resolution, it is claimed by the defendant that the resolution was as to the plaintiff invalid, and therefore the note sued upon of no validity or value. The articles of association are silent as to when the meetings of the directors shall be held, as to the necessary notice, the manner of calling them, and as to what number shall constitute a quorum; but they give to the directors "full power to make and ordain all by-laws." There is no evidence of any by-law on the subject; therefore, if there was a common-law quorum present at the meeting, there is no presumption that due notice was not given; but on the contrary, in such case the legal presumption is that the notice of the meeting was legally sufficient; or that due and legal notice thereof was given to all of the directors, unless it affirmatively appears that such was not the case: *Lane* v. *Brainerd*, 30 Conn. 565; *Sargent* v. *Webster*, 13 Met. 497; *Wells* v. *The Rahway White Rubber Company*, 19 N. J. Eq. 402; *Edgerly* v. *Emerson*, 23 N. H. 555.

We now come to the question as to what constitutes a quorum, and whether the presence and vote of the plaintiff; and his interest in the subject-matter invalidated the resolution as to him. At common law, where the corporate power is vested in a body consisting of a·definite number of persons, as a board of directors, and where the meeting of the directors is a regular or stated one, of which all are required to take notice, or a special one, of which all have been legally presumed. to have been duly notified, the major part of such board of directors constitute a quorum, a majority of which decide any question upon which they· have power to act: *Sargent* v. *Webster*, 13 Met. 497. Upon this question Chancellor Kent says: "There is a distinction taken between a corporate act done by a select or definite body, as a board of directors, and one to be performed by the constituent members. In the latter a majority of those who appear may act, but in the former case a majority of the definite body must be present; and then a majority of the quorum may decide. This is the general rule on the subject; and if any corporation has a different modification of the expression of the binding will of the corporation, it arises from the special pro-

visions of the act or charter of incorporation." 2 Kent's Com. 293; *Buell* v. *Buckingham & Co.*, 16 Iowa, 284; *Hayward* v. *Pilgrim Society*, 21 Pick. 270.

In the light of these authorities, there being no issue or charge of fraud, or want of good faith on the part of the plaintiff with reference to his vote at the meeting of the directors, I see no reason why his presence and vote should nullify the unanimous vote of the quorum, or the vote of his three associate directors who were a majority of all present, and against the validity of which no charge has been made. I am therefore of the opinion that the resolution was legally adopted: Angell & Ames on Corp. 233; *Smith* v. *Skeary*, 47 Conn. 47; *Twin Lick Oil Co.* v. *Marbury*, 91 U. S. 587; *The United States Rolling Stock Co.* v. *The Atlantic and Great Western R. R. Co.*, 34 Ohio St. 450.

The evidence shows that the mining property of the defendant was held and owned by Scott & Brown, but with the expectation and for the purpose of conveying it to the defendant upon its incorporation; that while it was so held it was in some manner not indicated by the record divided into thirty shares, and each man that took a share was to pay one thousand dollars to Scott & Brown for the purpose of developing it; and when the corporation was organized, stock was issued to each person that had bought a single share or proportion of the thirty shares, in proportion to the number of one-thousand-dollar shares he had taken; and the same persons that were interested in the property and paid their proportionate part were the incorporators, and afterwards stockholders in the defendant corporation. The plaintiff, being one of the persons for whom Scott & Brown held the property, paid his proportionate share of the cost and expense of developing the mining property, and the money so paid by him for this purpose, with interest to date of the note, was included therein. I am of the opinion that the money so paid or advanced by him was not a "loan or liability" within the terms or intent of the resolution, and therefore the committee named in the resolution did not have authority to include it in the note. It was not money loaned or advanced to the defendant. The plaintiff, in common with others, paid his just and proportionate share to Scott & Brown for the

development of mutual interests, and when the corporation was formed, and this property was conveyed to it, the plaintiff got the full benefit, in common with other stockholders, of the money by him and them advanced and paid, in promoting their mutual interests and common enterprise. And to the extent that the note was made up or composed of such items, there was a partial want of consideration. The record shows no act of the defendant indicating an intention of assuming any liability by reason of such advancements; and without undertaking to determine whether the corporation could legally assume and pay such claims, I am of the opinion that the amount of such items included in the note should have been deducted from it at the trial: 2 Sutherland on Damages, 114; 1 Parsons on Notes and Bills, 211.

The evidence shows that the stock of the corporation was full paid stock, and not assessable; that on the fourth day of February, 1874, there was a meeting of the stockholders, called according to the by-laws of the company, in which a majority of the stock was represented, and unanimously adopted the following resolution: "That the stockholders of this corporation do raise and pay to the treasurer forty cents on each of their respective shares of stock; and that such of the stockholders as do not elect to pay the same are requested to deposit their stock with the treasurer, on and subject to the condition that such of the stockholders as do pay such sums shall have the privilege of taking such stock at the expiration of nine months from this date, on paying the cost to such stockholders of said stock, including assessments heretofore made (and paid by the said stockholders), with ten per cent interest from this date; providing that any stockholder who deposits his stock, and who shall pay said forty cents on each share as aforesaid, within sixty days from this date, shall have his stock returned to him; and also provided that such stockholders elect within ten days to pay said forty cents a share, or to deposit their stock aforesaid." At this time the plaintiff owned three thousand two hundred and ten shares of the capital stock of the defendant company, and in compliance with the resolution paid to the treasurer eight hundred dollars, and two hundred and fifty dollars,

which, with interest, were allowed to the plaintiff, and included in the note.

The defendant claims that the committee, by including these items in the note, exceeded the authority conferred upon them by the resolution. This position, I think, is well taken. The resolution was in effect a proposition that the stockholders do, according to their several and respective interests, "pay" to the treasurer the sum therein named for the use, benefit, and purposes of the corporation; and the payment by a stockholder to the defendant of the required sum, or any part thereof, was as though he had made an assessment upon himself for the benefit of the corporation—the mutual good of all. The sum so paid became the money and property of the company, not by virtue of a "loan," but as a payment to the defendant for the advancement or promotion of its interests, of which each stockholder received his proportionate share of the gain to the aggregate body of stockholders, which constituted a valid consideration for the money so paid. The defendant claims that the committee, by including in the note items of account that had been due and payable the length of time required by the statute to bar an action thereon, exceeded their authority, as such items were not "an indebtedness against the company" at the date of the note. If this position is correct, the aggregate amount of such items should have been at the trial deducted from the note.

The defense of the statute of limitations is a personal privilege, which the debtor may assert or waive at his option, but when asserted, it must be set up by some affirmative act, expressing an intention of relying upon it as a defense; until such intention is expressed, which must generally be by demurrer or answer, the demand is good, notwithstanding the statute; and when successfully pleaded, is a bar to the remedy; it does not otherwise regulate or affect the debt. The expiration of the time which enables the debtor to plead the statute as a defense to an action to recover a debt does not operate as payment or extinguishment. The debt survives, although the debtor is enabled, if he so elects, to plead the statute, and thereby defeat an action brought thereon: *Grant v. Burr*, 54 Cal. 298.

There is no intention expressed in the resolution of relying upon the statute as a defense to any indebtedness of the defendant; and Scott and Holbrook were not invested with any express discretion or authority with reference to the statute of limitation as a defense to any demand against the defendant. They were "directed to make and deliver to the several stockholders who have loaned money to this company, and for the liabilities of this company, the notes of this company for such loans and liabilities." A debt within the statutory bar is a good consideration for a new promise, although made by an agent, if within the scope of his power. "An acknowledgment made by an agent in respect to demands relating to concerns within the scope of his authority is binding upon his principal:" Angell on Lim. 261.

It is to me quite clear that the inclusion of these items in the note was not an unauthorized act, and therefore the value of the note, because the statute might have been successfully pleaded to an action upon them, had one been commenced, is not thereby impaired.

For these reasons, sanctioned by many authorities, I am of the opinion that the court erred in instructing the jury that, " if the jury find that any of the items entering into the amount of the note in this case were barred by the statute of limitations in force in Michigan at the date of this note, the amount at which they were figured in the note should be deducted therefrom, as not being a legal liability under the resolution offered."

This instruction is erroneous in another respect. Instructions should be precise and certain to a particular intent, and the law applied to facts in evidence clearly expressed.

Telling the jury that if they should find that any of the items included in the note were barred by the statute, the amount of such items should be deducted therefrom, is not an intelligible statement of the law applicable to the particular facts in evidence. Reference to the statute, although it may have been copied *in hæc verba* into the pleadings of the case, is not informing them what facts are necessary to bring the debt or demand within the statutory bar: Thompson on Charging the Jury, sec. 67.

The record presents a large number of assignments of

error, but the foregoing is sufficient in principle, if correctly
applied to the facts of the case, to determine all the material
questions raised or argued by counsel.

The judgmeut of the district court is reversed, and the case
remanded for a new trial.

EMERSON, J., concurred.

HUNTER, C. J., dissented.