BROWN et al. v. GRAND RAPIDS PARLOR FURNITURE CO. et al.

(Circuit Court of Appeals, Sixth Circuit. October 2, 1893.)·

No. 83.

1. ASSIGNMENT FOR BENEFIT OF CREDITORS — WHAT CONSTITUTES — CHATTEL MORTGAGES.

Chattel mortgages by an insolvent corporation to secure a portion of its debts are not common-law assignments with preferences, as between creditors, within 2 How.·St. Mich. § 8739, declaring such assignments void. Sheldon v. Mann, 48 N. W. Rep. 573, 85 Mich. 265; Warner v. Little-field, 50 N. W. Rep. 721, 89 Mich. 329; Bank of Montreal v. J. E. Potts Salt & Lumber Co., 51 N. W. Rep. 512, 90 Mich. 345,—followed.

2. SAME.

Nor is a chattel mortgage an assignment, within the statute, although, in view of the impossibility that the corporation can ever redeem, its effect, necessarily, is to transfer the property to the trustee named in the mortgage, who thereunder may sell and distribute the proceeds in the same manner as an assignee under such an assignment, for the right of redemption by the corporation or attaching creditors would neverthe-less exist. Warner v. Littlefield, 50 N. W. Rep. 721, 89 Mich. 329, dis-tinguished.

3. CHATTEL MORTGAGES—DEFEASANCE.

A defeasance clause of a mortgage, providing that, if the debts be paid at maturity, the mortgage and the notes secured thereby shall be void, and containing an agreement to pay the same accordingly, is not rendered nugatory by the fact that one of such notes was due when the mortgage was made, but should rather be construed to require a de-mand for payment of the note subsequent to the giving of the mortgage, and a refusal to pay, before the mortgage will become absolute.

4. CORPORATIONS—CHATTEL MORTGAGES.

Under a resolution by the directors of a corporation reciting an agree-ment by a creditor to advance to the corporation $3,000, and a further sum of $1,000 if required, and authorizing the secretary and treasurer to secure the total indebtedness by chattel mortgage, such creditor, hav-ing advanced the $3,000,—the additional $1,000 not being required by the corporation,—is entitled to the mortgage.

5. SAME.

A further authorization in such resolution, to the officers named, to se-cure·"any and all other creditors" by subsequent mortgages, does not require a mortgage to secure all other creditors, as "and,". in that con-nection, has the meaning of ."or."

6. SAME—MORTGAGE SECURING OBLIGATIONS OF DIRECTORS AND STOCKHOLDERS.

Such mortgages are not invalidated ‚by the fact that some of the di-rectors and stockholders, who, as such, voted for the resolution author-izing the mortgages, were˙also guarantors and indorsers upon most of the secured notes. Bank of Montreal v. J. E. Potts Salt & Lumber Co., 51 N. W. Rep. 512, 90 Mich. 345, followed:

7. FEDERAL COURTS—FOLLOWING STATE DECISIONS.

Whether a chattel mortgage is void under a state statute, as being a common-law assignment for benefit of creditors, with preferences, being purely a question of local law, should be decided in accordance with the latest exposition of the law by the highest tribunal of the state.

8. SAME. ·

Where the federal court is in doubt as to a doctrine of general law, it is its duty to lean towards the decision of the state court.

Appeal from the Circuit Court of the United States for the Southern Division of the Western District of Michigan.

In Equity. Bill by Willard S. Brown and others against the Grand Rapids Parlor Furniture Company and others to set aside certain chattel mortgages. Decree dismissing the bill. Complainants appeal. Affirmed.

Statement by TAFT, Circuit Judge:

This was an appeal from a decree of the circuit court for the western district of Michigan, southern division. The bill was filed by Willard S. Brown, Jacob G. De Turk, and John T. Brown, citizens of the state of Pennsylvania, against the Grand Rapids Parlor Furniture Company, a corporation of Michigan, and other defendants, the beneficiaries of certain mortgages made by the furniture company to secure debts owing to them. The bill was for the purpose of setting aside these mortgages, as made by the furniture company to hinder, delay, and defraud creditors, and also as being assignments in violation of the assignment law of Michigan, and, further, as invalid because made by the directors of the furniture company to secure debts, in the payment of which the directors had a personal interest. The Grand Rapids Parlor Furniture Company had been organized in April, 1886, in the name of the Strahan & Long Furniture Company, with a capital stock of about $10,000. The company was organized by Harry W. Long, defendant herein, and others. Long's share of the stock was $5,000, to pay for which he borrowed money of his wife, Margaret, another defendant, to whom he gave his note for the amount. In January, 1889, the name of the company was changed to the Grand Rapids Parlor Furniture Company. The capital of the company was increased so that the paid-up capital amounted to $21,500. Harry Long presented his wife with 128 shares. She became the owner of 40 other shares, making her the holder of 168 shares. Her husband, then, was the owner of 282 shares; she held 168; W. J. Long, Jr., brother of Harry, held 189 shares; James M. Pierce, 200 shares; Harry Hubbard, 20 shares; and John E. Moore, 1 share. The Long brothers and Thomas M. Pierce were directors. At various times, Harry Long had loaned the company money, so that in March, 1891, he held its notes for $6,800. In that month, Mrs. Long, who held separate property of her own, received from her father and her uncle, and managed by J. W. Champlin, became nervous lest the ownership of the stock might subject her to a liability, under the statutes of Michigan, to the payment of labor claims against the corporation, and she therefore desired to part with her stock. Her husband purchased the stock, and paid off an obligation of his own, owing to his wife, by transferring all the notes which he held against the corporation, for $6,800. A day or two after, a bank in Grand Rapids having refused to renew a note of the company for $3,000, upon which Harry Long was indorser, Mrs. Long was induced to give to the company some street-railway stock which she owned, valued at $3,000, to enable the company to renew the notes with the collateral, and, further, to agree to let the company have $1,000 additional when needed, on condition that it would give her security, whenever she might demand it, for the entire debt, including the $6,800 as well as the new loans. At a stockholders' meeting a resolution was passed, authorizing the directors to comply with this condition, and the $3,000 of street-railway stock was delivered in March, 1891. The other $1,000 was never called for. In July, 1891, the company was asked to pay a $1,000 note held by Clara M. Pierce, wife of Thomas M. Pierce, one of the directors. Legal proceedings were threatened, to collect the note. The company had no money to pay it. Harry Long notified his wife, who was at Mackinac, that she ought to demand security, and she at once made such demand. Judge Champlin, also, was advised, and he superintended the obtaining of the security. The mortgage was drawn by Moore & Wilson, and covered all the merchandise and assets of the company, with the exception of the bills receivable. On the same day, somewhat later, Harry Long directed Moore & Wilson to make a mortgage to Charles M. Wilson, trustee, to secure labor debts; a note to the Fifth National Bank for $1,000; a note to the Fourth National Bank for

$5,000; Clara M. Pierce, $1,000; Asa Denison, $1,000; Northwestern Trimming Company, $383; J. V. Farwell Company, $307; W. and J. Sloan, $667. Harry Long was indorser on the notes for $6,800 held by his wife, and also upon the notes held by the Fifth and Fourth National Banks; and upon those held by Denison, the Northwestern Trimming Company, J. V. Farwell Company, and by Sloans. W. J. Long was indorser on the paper at the Fourth National Bank. All the stockholders, as has been already stated, were personally liable for the labor debts. The two mortgages were executed July 18th, and were filed July 20th; the one at 9:25 A. M., and the other at 9:28 A. M. July 21st, Judge Champlin, as the agent for Mrs. Long, and Wilson, as the trustee for the creditors named in the mortgage to him, took possession, jointly. On the 28th of July the complainants filed this bill on behalf of themselves, and other creditors similarly situated. Wilson, the trustee, was appointed receiver, and has brought into court $21,500 as the fund realized from the assets of the defunct corporation. The debts of the corporation amount to about $37,000. If both mortgages are sustained as valid, they will more than consume the assets of the corporation. The circuit court held that the mortgages were valid, and entered a decree dismissing the bill.

Edward Taggard and Arthur C. Denison, for appellants.
John E. More and Kingsley & Kleinhaus, for appellees.

Before JACKSON and TAFT, Circuit Judges, and BARR, District Judge.

TAFT, Circuit Judge, (after stating the facts.) It is not contended on behalf of the complainants that the debts which the mortgages in question were given to secure are not valid debts of the company, with the exception of the note held by Clara M. Pierce for $1,000. Whether the Pierce note is a valid obligation is not material on this issue, because the other secured debts, if the mortgages are held valid, are more than enough to consume the fund in court. There is no charge of actual bad faith made with reference to the giving of these mortgages. The contention of the complainants is that these mortgages should be held to be invalid—First, because they are, in effect, common-law assignments, with preferences, as between creditors, and are therefore void under the statute of Michigan (2 How. St. § 8739) which provides that "all assignments commonly called common-law assignments for the benefit of creditors shall be void unless the same shall be without preference as between such creditors, and shall be of all the property of the assignor not exempt from execution;" second, because the mortgages were given by an insolvent corporation to secure debts in which the stockholders and directors, whose votes made the mortgages the act of the corporation, had a personal interest in them, as grantors thereof.

1. The question whether these chattel mortgages are void, as common-law assignments giving preference to creditors, under the statute of Michigan, is a question purely of local law. This is expressly decided by the supreme court of the United States in the case of Etheridge v. Sperry, 139 U. S. 266, 11 Sup. Ct. Rep. 565. Mr. Justice Brewer, speaking for the court, said in that case:

"While chattel mortgages are instruments of general use, each state has a right to determine for itself under what circumstances they may be executed, the extent of the rights conferred thereby, and the conditions of their validity. They are instruments for the transfer of property, and the rules concerning the transfer of property are, primarily, at least, a matter

of state regulation. We are aware that there is a great diversity in the ruling on this question by the courts of the several states; but, whatever may be our individual views as to what the law ought to be in respect thereto, there is so much of a local nature entering into chattel mortgages that this court will accept the settled law of each state as decisive in respect to any case arising therein."

There can be no doubt that, under the decisions of the supreme court of Michigan, the mortgages in question here are not violations of the statute forbidding preferences in common-law assignments. It is said that at the time these mortgages were executed, under the then last decision of the supreme court of Michigan, in Kendall v. Bishop, 76 Mich. 634, 43 N. W. Rep. 645, these mortgages would have been invalid, and that the law of the state, which this court should follow with respect to the mortgages, is the law which was in force as then expounded by the supreme court. Conceding, for the purposes of the argument, that under the case of Kendall v. Bishop, supra, these mortgages must be held invalid, we are of opinion that, if subsequent decisions of the supreme court have reversed the principle announced in that case, we should follow those subsequent decisions. The right of the complainants and their general creditors to take the mortgages was a remedy, and not a contractual right; and there is nothing in this case to show, or justify a presumption, that the debts represented by the complainants and other unsecured general creditors were contracted on the faith of the inability of the corporation to prefer creditors by chattel mortgage. Certainly, it would not impair their contracts of indebtedness if the legislature of Michigan had repealed the statute making common-law assignments with preferences void. If so, the law of the state of Michigan, which we are to administer, is the law of the state, as expounded by its highest tribunal, when the remedy comes to us for our enforcement. It was decided in Warner v. Littlefield that a debtor, though insolvent, might secure a creditor, for the payment of a pre-existing debt, by a mortgage upon all his property, although he should have numerous creditors who were unsecured, and that neither the fact of the debtor's insolvency, nor the knowledge of the creditor of that fact, would defeat or impair a mortgage security taken for an honest debt; that the fact that the mortgagee was not the creditor of the mortgagor, and that the mortgage was executed in trust to secure certain specified creditors the amounts of their several claims, did not tend, in any degree, to give the instrument the character of a common-law assignment; that if the instrument was a conveyance given upon condition, as a security for a pre-existing debt, and contained no trust in its body, whereby the property was withdrawn from the right of the mortgagor or others to redeem, who ordinarily have such right in cases of chattel mortgages, or whereby the title of the property was placed beyond the reach of execution as to any surplus, then the instrument was a chattel mortgage, but if it conveyed the absolute title to a trustee for the benefit of creditors, and thus placed the property and surplus beyond the reach of creditors, it was a common-law assignment; that the question whether the instrument was a chattel mort-

gage, or an assignment for the benefit of creditors, must, in all cases, be determined as a question of law, upon the contents of such instrument, and not from any outside testimony; and that unless the conveyance, upon its face, purported to convey all of the debtor's property to secure certain preferred creditors, by an absolute title, the court was not at liberty to declare it a common-law assignment. The case of Warner v. Littlefield only followed the case of Sheldon v. Mann, 85 Mich. 265, 48 N. W. Rep. 573, and was followed by the supreme court in Bank of Montreal v. J. E. Potts Salt & Lumber Co., 90 Mich. 345, 51 N. W. Rep. 512.

It is not disputed that the mortgages in this case have the ordinary form of a chattel mortgage under the statutes of Michigan. They have the defeasance clause, and the necessary legal import of their language is that the absolute title does not pass to the person named as mortgagee, but only a title on condition; leaving in the mortgagor the right to redeem the same, and in the general creditors the right to levy upon the equity of redemption. Reliance is had on the fact that one of the notes under the second mortgage was due at the time the mortgage was given. The language of the defeasance clause of that mortgage was as follows:

"To have and to hold the same forever: provided, always, and the condition of these presents is such, that if the said party of the first part shall pay or cause to be paid the debts above mentioned, with interest thereon, at maturity, then this instrument and said notes shall be void and of no effect, and said party of the first part agrees to pay the same accordingly."

We do not think the defeasance clause is rendered null and void by reason of the fact that one of the debts secured by the mortgage was due at the time the mortgage was given. The sensible construction of the defeasance clause would seem to be that the mortgage would not become absolute until after demand for the payment of the note subsequent to the giving of the mortgage and a refusal to pay. Reliance is had by the complainants on certain language of the supreme court of Michigan in the case of Warner v. Littlefield, already referred to, as follows:

"The question as to whether the instrument is a chattel mortgage, or an assignment for the benefit of creditors, must, in all cases, be determined as a question of law upon the contents of such instrument, and not upon any testimony which appears outside of such instrument; and unless the conveyance, upon its face, purports to convey all of the debtor's property to secure some creditors, in preference to others, by an absolute title, the court is not at liberty to declare it a common-law assignment; and if the facts appear outside of the instrument itself, and tend to prove that the instrument was made with the intention of having the effect of a common-law assignment, or with the intention of evading the statute, then it becomes a question of fact, for the jury to decide, and not for the court."

It is said here that the facts dehors the instrument show that it was intended by the parties to be a common-law assignment, though on its face it was only a chattel mortgage. That the effect of a mortgage which conveys all the property of an insolvent debtor to a trustee, with power to sell, and distribute the proceeds among the preferred creditors, whose claims exceed the value of the property conveyed, is practically the same as a common-law

assignment, was, of course, obvious to the court rendering the above opinion.   It cannot, therefore, be construed to mean that because a chattel mortgage has the effect of a common-law assignment, in that it disposes of all the property of the debtor, with preference to certain creditors, the debtor himself intended a common-law assignment.   It may be a little difficult to say what distinction the court did have in mind, in the above language.   It was probably referring to a case where there is some secret agreement between the debtor and the mortgage creditors, dispensing with the obligation of the defeasance clause, so that the mortgage, on its face, does not express the real agreement between the parties.   There is nothing in this case to show that the mortgage was not a bona fide attempt to secure pre-existing indebtedness.   Its effect, in view of the impossibility and improbability that the corporation could ever redeem the property, was necessarily to transfer the property to a trustee, who should sell it, and distribute the proceeds as an assignee under a common-law assignment would.   But it is not shown, and we cannot infer, that, if the corporation or any attaching creditor had seen fit to redeem the property by paying the debts secured by the mortgage, there would have been resistance on the part of any secured creditors to an enforcement of this right secured by the mortgage.   We are very clear, under the cases cited, that in Michigan the mortgages are valid.

Objection is made that the mortgages were not authorized by the directors and stockholders, as given.   It seems to us that they are quite within the resolution passed by the stockholders.   The recital in the resolution made the consideration for giving the mortgage the advancing of the additional $3,000 by Mrs. Long, to assist the corporation, and the agreement to advance $1,000 more, when required. The other $1,000 was not required by any one connected with the corporation, and it cannot be said, therefore, that she did not comply with her full contract, entitling her to the mortgage.   The resolution authorized the secretary and treasurer to secure any and all other creditors by mortgages subject to, and subsequent to, the mortgage to Mrs. Long.   It is said that this required a mortgage which should secure all other creditors.   We do not think so.   It was evidently the intention to give the right to secure any other creditors, the word "and" having the meaning of "or," in that connection.

2. We now come to the question whether the fact that Harry and W. J. Long, directors, were interested as guarantors and indorsers upon most of the notes secured by the mortgages, and were directors and stockholders in the corporation, and as such voted to give the mortgages, renders the mortgages invalid.   The question has been directly decided by the supreme court of Michigan against the contention of the complainants.   In the case of Bank of Montreal v. J. E. Potts Salt & Lumber Co., 90 Mich. 345, 51 N. W. Rep. 512, mortgages which secured directors, given by an insolvent corporation, were held to be valid.   Said the supreme court, (Montgomery, J.:)

"Nor is the law of this state that, as soon as a corporation becomes insolvent, the directors of the corporation become trustees for all the creditors alike, in such sense as to prevent their giving valid security by way of preference to one of the directors or stockholders. We are aware that the decisions of the various states are not uniform as to this question, and that a number of very eminent text writers have deprecated a state of the law which admits of such preferences. But, to adopt the language of Dillon, J., in Buell v. Buckingham, 16 Iowa, 284, this condition of the law 'may constitute a good legislative reason for giving priority to outside creditors, but the legislature must furnish the remedy.' In the case referred to, it was held that being an officer of the corporation did not deprive Buell of the right to enter into competition with other creditors, and run a race of diligence with them. See, also, Hallma v. Hotel Co., 56 Iowa, 179, 9 N. W. Rep. 111; Garrett v. Plow Co., 70 Iowa, 697, 29 N. W. Rep. 395; Smith v. Skeary, 47 Conn. 54; Catlin v. Bank, 6 Conn. 233; Banking Co. v. Claghorn, 1 Speer, Eq. 545; Bank v. Whittle, 78 Va. 739; Leavitt v. Mining Co., 3 Utah, 265, 1 Pac. Rep. 356; Whitwell v. Warner, 20 Vt. 444; Holt v. Bennett, 146 Mass. 437, 16 N. E. Rep. 5; Oil Co. v. Marbury, 91 U. S. 587; Wilkinson v. Bauerle, (N. J. Err. & App.) 7 Atl. Rep. 514."

To the cases cited in the above opinion may be also added Hills v. Furniture Co., 23 Fed. Rep. 432; County Court v. Baltimore & O. R. Co., 35 Fed. Rep. 161; Gould v. Railroad Co., 52 Fed. Rep. 680; Stratton v. Allen, 16 N. J. Eq. 233; Duncomb v. Railroad Co., 84 N. Y. 190.

Several cases have been cited, some of them decisions of circuit courts of the United States, in which it has been held that, while it is lawful for a corporation to prefer creditors, it is not equitable or permissible for directors of a corporation to prefer themselves, even if they are bona fide creditors, because they are trustees. It may be conceded that the trust relation justifies and requires courts of equity to subject preferences by an insolvent corporation of its own directors to the closest scrutiny, and places the burden upon the preferred director of showing, beyond question, that he had a bona fide debt against the corporation; but we do not see why, if a corporation may prefer one creditor over others, it may not prefer a director who is a bona fide creditor. Preferences are not based on any equitable principle. They go by favor, and as an individual may prefer, among his creditors, his friends and relatives, so a corporation may prefer its friends.

There are, as has been said, several decisions in the federal courts upholding the opposite doctrine, but no such decision has been rendered by the supreme court of the United States. The supreme court of the United States, in several cases, has held that the subscriptions of its stockholders are a trust fund for the payment of its creditors, in so far that the corporation may not release stockholders from payment thereof, (Scovill v. Thayer, 105 U. S. 143;) but it has as yet not announced the doctrine that the assets of a corporation are a trust fund for equal distribution among its creditors. For a full review of the cases, see the opinion of Mr. Justice Brewer in Hollins v. Iron Co., 14 Sup. Ct. Rep. 127, (decided by the supreme court of the United States, November 20, 1893.) That court has not announced the doctrine that a corporation may not prefer one of its creditors, and it has not announced the doctrine that a corporation may not prefer as a creditor one of its directors. In

the case of Purifier Co. v. McGroarty, 136 U. S. 237, 10 Sup. Ct. Rep. 1017, the supreme court of the United States followed the supreme court of Ohio in holding that the assets of an insolvent corporation were a trust fund for equal distribution among its creditors; but they did so expressly on the ground that this was the decision of the supreme court of Ohio, founded on the constitution and statute law of that state with reference to corporations. The opinion of Mr. Justice Gray contains a very broad intimation that there is no general equitable principle requiring such equal distribution among the creditors of the corporation. All the decisions of the supreme court of the United States relied on and referred to as sustaining the view that the bona fide debt of a director of a corporation may not be paid in preference to the debt of some other creditor are cases where the directors were guilty of fraud in procuring the payment of their own debts by fraudulent wasting of the assets to accomplish the preference. Such were the cases of Drury v. Cross, 7 Wall. 299; Koehler v. Iron Co., 2 Black, 715; Jackson v. Ludeling, 21 Wall. 616. There is no such element in this case.

It has been argued that upon this question the court should reach a conclusion as upon a doctrine of general law, and not be governed by the decisions of the supreme court of Michigan. Whether this be true or not, it is the duty of the court, where the matter is one of doubt, to lean towards the decision of the state court.

The decree of the court below is affirmed, at the costs of the appellants.