## Cosmopolitan State Bank, Inc., v. W. Harry Barnes.
## Same v. Mattie E. Barnes.

*Banks—Insolvency—Officers—Contribution of fund to enable bank to continue business—Notice of obligation—Liability of bank to return money.*

Where officers and stockholders of a bank which has been taken over by the Secretary of Banking voluntarily raise and contribute a sum of money so as to permit it to continue its business, such contribution is not a debt against the corporation, but becomes an asset and cannot be recovered or set off against obligations due the corporation from the stockholders.

Action on promissory notes and claim of set-off. M. C. Phila. Co., July T., 1925, Nos. 274 and 276.

*Breitinger & Millar*, for plaintiff; *G. P. Williams*, for defendants.

LEWIS, J., Aug. 1, 1927.—The Cosmopolitan State Bank, Inc., in possession of Peter G. Cameron, Secretary of Banking for the Commonwealth of Pennsylvania, as plaintiff, sued to recover from the defendant upon two promissory notes, each in the sum of $1000, one bearing date of Dec. 3, 1924, and the other Jan. 7, 1925, both payable to the order of the Cosmopolitan Bank, Inc. The execution of the notes, as well as the demand and refusal to pay, were admitted.

By stipulation between counsel, it was agreed that the two actions as of the above term and numbers should be tried together, and that the court's findings as to one be conclusive of the other.

The actions were tried by the court without a jury, and the testimony developed the following situation:

The Cosmopolitan State Bank, Inc., was organized in the latter part of 1923, and opened for business some time in January of 1924.

The defendant was both a vice-president and a stockholder of the bank.

On Jan. 29, 1925, the bank being in an unsound financial condition, the Department of Banking of the State of Pennsylvania, by virtue of the authority vested in it, took up for examination the plaintiff bank and appointed George W. Brown, Jr., special deputy and agent to take over its affairs on Feb. 13, 1925.

The special deputy and agent of the Commonwealth suggested to the defendant and to the other directors that they secure additional funds for the bank so that it might be permitted to remain open and do business.

Certain collateral of the Cosmopolitan State Bank, Inc., having been deposited with the Northwestern National Bank as security for a debt of the former institution, the defendant, together with three other officers of the Cosmopolitan State Bank, Inc., personally discounted a note in the sum of $8000, which, with $3700 additional, they turned over to Mr. Brown, who delivered it to the Northwestern National Bank, which latter institution then released the

collateral of $37,500 belonging to the Cosmopolitan State Bank, Inc. The latter institution, after the receipt of this sum, remained open for several days, and then closed its doors.

Upon his liability on the $8000 note discounted as aforesaid, the defendant Barnes has paid the sum of $1200, and it was contended in his behalf that, because of his further liability on said loan to the extent of at least $800 more (there having been four signatories to the note), he should be allowed a set-off in the sum of $2000 against plaintiff's claim in this action. In effect, it is maintained that the entire transaction, whereby the additional cash was raised so that the bank might be permitted to remain open, was a loan to the bank. If it is determined that the money thus paid over to Mr. Brown and to the bank and raised, in part, by the defendant, was a loan to the Cosmopolitan State Bank, Inc., a finding ought to be made for the defendant, otherwise the plaintiff must succeed.

Upon the surface, certainly it would seem that the defendant has a genuine claim for a set-off, and an extended and able argument was presented to the trial judge in an effort to convince him that the transaction amounted to a loan and that the set-off should be allowed.

On the other hand, it was urged upon the court that what the defendant did was voluntarily to make a contribution to the bank, so as to permit it to continue its business, and that, therefore, no set-off of plaintiff's claim upon defendant's note can, under the circumstances, be permitted.

This question does not seem to have been heretofore directly raised in our State, but authorities in other jurisdictions have, on a number of occasions, passed upon the point involved.

In Brodrick *v.* Brown, 69 Fed. Repr. 497, the receiver of an insolvent bank brought an action to recover on three promissory notes of the defendant. In answer to the action, defendant counter-claimed by showing that he loaned the bank $20,500, which had never been repaid to him. The issue there was whether the money advanced by the defendant to the bank was a loan or a voluntary contribution for the betterment of the stock to enable the bank to resume business.

Welbourn, District Judge, in a careful opinion, says:

"The law is well settled that where stockholders voluntarily assess themselves to relieve the corporation from pecuniary embarrassment or for the betterment of their stock, whatever may be the occasion of the assessment, the advances thus made are not debts against, but assets of, the corporation: Bidwell *v.* Railroad Co., 6 Atl. Repr. 729; Leavitt *v.* Mining Co., 1 Pac. Repr. 356; 2 Thompson on Corp., § 1717.

"While there is some conflict in the oral testimony as to the nature of the transaction which eventuated in the raising of the $50,000, of which defendant's payment of $20,500 was a part, careful consideration of all the evidence satisfies me that the advances thus made were not loans, but voluntary contributions by the stockholders for the betterment of their stock and to enable the bank to resume business. The chief contention of the defendant is that where money is deposited with a bank generally, without any special agreement in reference thereto, such deposit is a loan and, therefore, a debt against the bank in favor of the depositor. This proposition, rightly understood, is unquestionably correct and abundantly sustained by authority.

"In the case of Scammon *v.* Kimball, 92 U. S. 370, cited and quoted from defendant's brief, the principle is thus stated:

"'. . . Sums which are paid,' says Lord Denman, 'to the credit of a customer with a banker, though usually called deposits, are in truth loans by the

customer to the banker, and the party who seeks to recover the balance of such an account must prove that the loan was in reality intended to be his and that it was received as such: Sims v. Bond, 5 Barn. & Adol. 392.

" 'Exactly the same rule was laid down in the Court of Exchequer, where it was held that money deposited with a banker by his customer in the ordinary way is money lent to the banker with a superadded obligation that it is to be paid when demanded by a check: Pott v. Clegg, 16 Mees & W. 327.'

"From this quotation, particularly the latten paragraph, it will be seen that to make the deposit of money in bank a loan in the absence of an express contract it is essential that the money be deposited 'in the ordinary way.' This statement of the law reveals the vulnerable point in defendant's argument, for manifestly the money paid by defendant to J. B. Lazier, the bank examiner, for the use of the bank was not money deposited 'in the ordinary way.' The bank, at the time, was not doing business 'in the ordinary way;' indeed there was an entire suspension of its usual business. The bank was closed and in the charge of the Comptroller of the Currency of the United States. There was no one who could on its account have received deposits 'in the ordinary way;' no such power resided even in the comptroller. The most and all that he could do was to prescribe the conditions on which there could be a resumption of business. This course he did adopt, and the prescribed condition was that the stockholders should raise and turn over for the use of the bank $50,000. This condition was complied with. The money thus raised and turned over could not have been a loan for the obvious reason that no one at the time was authorized to borrow money for the bank. The only possible theory consistent with the situation of the bank and the circumstances of the parties is that the transaction was a voluntary assessment."

In the case at bar, the defendant Barnes knew the condition of the bank, was interested in its continuing to function, and when, together with his associates, he brought the money which they had raised on their note and turned the same over to Brown for the plaintiff's bank, it was not a deposit in the ordinary way. It was not left with the bank as a depositor leaves his money with the bank with which he does business.

In Chapman v. Cutrer, 29 So. Repr. 467, a case which has many of the characteristics of the instant case, a bank being in need of funds, the complainant, its vice-president, was asked to go to Memphis to raise them. He was unable to raise money for the bank, but succeeded in borrowing $1500 on his own account, and turned that amount, less the interest, over to the cashier of the institution. The bank held notes, secured by a mortgage, upon the obligation of the complainant. He filed a bill to restrain the receiver of the bank from foreclosing the mortgage, contending that he was entitled to a set-off in the sum of $1500 against his liability to the bank on the notes. His claim was disallowed, the court holding that the delivery of the $1500, less the discount, was a voluntary contribution on the part of the complainant, holding, also, that the complainant was estopped from maintaining his claim for a set-off.

In Leavitt v. Oxford & Geneva S. M. Co., 3 Utah, 265, it was held that, where stockholders mutually paid to the treasurer of a company money for the use, benefit and purpose of the corporation, it was as though they had made an assessment upon themselves for the benefit of the corporation and the mutual good of all.

"The sum so paid," reads the opinion of the court, "became the money and property of the bank, not by virtue of a 'loan,' but as a payment to the defendant for the advancement or promotion of its interests."

Moreover, we think it would be contrary to public policy to permit the claim of set-off in this case. To one who was not familiar with the condition of the institution at the time the money was paid over by the defendant, there was every indication it became an asset of the Cosmopolitan State Bank, Inc. It permitted the bank to remain open and function for the period of about a week. Business was transacted by the bank, liabilities incurred, bank customers entered into new obligations. The entire status of the business of the bank must have been materially affected as a result of the contribution made by the defendant Barnes and his co-directors. For the period in which it remained open, the bank was held out to the business world as one with which business could be safely transacted.

It must be remembered that the litigation is not between the corporation bank as a solvent institution on the one hand and the defendant on the other. A different question would arise were that the situation. What we have here is a case of a banking institution in possession and under the control of the Secretary of Banking, a bank in the possession of one who had all the rights and powers of a receiver appointed by the courts.

There is no evidence that Mr. Brown, the special deputy and agent of the Department of Banking, agreed to repay the sum of money contributed by the defendant and his associates, even if he had a right to enter into such an agreement. If there were an implied understanding that the money turned over to him by the defendant and his co-directors was a loan, such an understanding would not be binding upon creditors, and might even be a fraud upon the rights of the latter.

In Skordal *v.* Stanton, 89 Minn. 511, a director of a bank delivered his promissory note to the bank to cover the amount of impaired capital. Subsequently, the bank became insolvent. The receiver brought an action upon the note and recovered a judgment. He paid the judgment and subsequently filed a petition in insolvency proceedings for leave to file his claim against the bank for the amount so paid by him. The director raised the question of consideration for the note in the action by the receiver against him and in which judgment had been obtained, and the court, after stating that the judgment in that action disposes of the defence which he had interposed, goes on to add: "Even if this were not true, it is very evident from the facts appearing that Skordall has no claim upon funds in the hands of the receiver as against general creditors; the assets of the bank had become impaired, and, with other directors, he executed and delivered the note to make good the deficiency. He did this in order that the bank might keep its doors open and go on with its business. The bank continued to deal with depositors and others, all parties relying, undoubtedly, upon this, among other securities, and when the assets are being collected for the purpose of meeting its obligations, Skordall cannot be heard to deny the validity of his note; as to creditors, he is estopped from asserting this defence."

Stockholders may voluntarily assess themselves for the betterment of the corporation, but such assessments are not debts against the corporation, but are regarded as its assets. Payment on a voluntary assessment cannot be recovered back from the corporation: Brodrick *v.* Brown, 69 Fed. Repr. 497; Bidwell *v.* Pittsburgh Ry. Co., 114 Pa. 535; 4 Thompson on Corp., § 4814. See, also, 2 Thompson on Corp., § 1499.

Bearing in mind the obligation of a director of a corporation, and particularly a banking institution, to use a high degree of care and diligence to see that creditors are not misled by their conduct, we think the defendant can have no claim upon the funds in the hands of the Secretary of Banking as

Cosmopolitan State Bank, Inc., *v.* W. Harry Barnes and Mattie E. Barnes.

against general creditors. The money paid by the defendant, under the circumstances as detailed, became the money and property of the bank, not by virtue of a loan, but as a contribution for the advancement and promotion of its interests. It was voluntarily made in order to enable the bank to resume, and thereafter for a short period continue in, business. That in itself was a good consideration: Hurd *v.* Kelly, 78 N. Y. 588.

While it would seem like placing an unjust burden upon the defendant, a review of the authorities has convinced the trial judge that, under the circumstances as they appear in this case, the defendant should be estopped from setting up the set-off in the amount of his contribution to the deputy and agent of the banking examiner. We think, both upon principle and upon grounds of public policy, the defendant should not be permitted to assert that the money contributed by him and his co-directors was a loan and not an asset of the bank.

For these reasons, the court enters a finding for the plaintiff in the sum of $1140.