Curia.

The affidavits in this case are very voluminous; and disclose the utmost fairness throughout the proceedings in question. The result probably accords with the wishes of those holding a decided majority of the votes. But these are considerations to which we cannot advert, if there be lawful ground, however strict and technical, for saying the election was irregular. True, by the 9th section of the act of 1825, we- are to make such order and give such relief as right and justice may appear to require. But we cannot pronounce on this right and justice arbitrarily. The statute means the legal rights of the parties.
By the 3d section of the act incorporating this company, the stock, property, estate, affairs and concerns of the corporation, shall be managed and conducted by directors; and the 15th section is, that a majority present at a regular meeting, shall be competent to decide on all business and concerns relating to the corporation. The original commissioners declared that the number of directors should be r nine; and no alteration has since taken place in that respect. We must, therefore, assume this as the settled ""and definite number. Then, did two of that number constitute a board for the purpose of doing any act regulating the election? We must take both parties as assuming upon these papers, that inspectors were necessary. It would be violent to presume that the corporation intended to proceed without so usual, not to say necessary organ of an election. _The 11th section of the act of 1825, supposes them to exist in every case. It was the business of the directors, as officers of the company, to see that these agents were properly appointed. In order to the transaction of this as well as other business, there must be a competent board. Whether we are to regard this as an electing power ; or as part of the business of the directors in their regulation of the election; and (among other regulations) a designation of the persons who shall receive and canvass the votes; in either view, we think there must, at least, a majority of the directors be present to constitute a board.(a) *409 Some statutes of incorporation declare expressly what jyjjokgj. ig necessary to make a board. Not so here. We do not understand the words; “ a majority of the directors present shall- be competent,” &c., in the 15th section, as amounting to a declaration that a minority, however small, may decide. It leaves the number competent to a quorum, to be determined by the rules of the. common law, which in no case of this kind is satisfied with less, than a majority, If it be the exercise of the power to make by-laws, rules or regulations, conferred upon them by the 9th section of-the act of incorporation, the point is clear. They are, prescribing a rule of conduct; and their acts are in-the nature of legislation. The general rule, also, is, that to make a TJ-orum °f a select and definite body of men possessing the power to elect, a majority at least must be present; (a) and then a majority of the quorum may decide.(b) Here were but two out of nine directors. Not being a majority, the election must beset aside on that ground. The distinction is between a corporate act to be done by a select body, and one to be performed by the Constituent members. In the latter case, a majority of those who appear may act.(c)
 (d)
*410 Here we might stop. But it is important to any future election, that we should pronounce on the right to vote upon'what is here called hypothecated stock. We do not consider it such, in virtue of the standing by-law which is admitted to exist under the. 10th section; and which we believe is very common in the corporations of the state. *410-1 Hypothecation is conventional; and implies the power of ren(3erjng the subject available by way of sale, to satisfy *ke debt on default of payment. The stock stood on the transfer books in the name of the voters. This is generally conclusive upon the inspectors; and we consider it so in the case.
*But we do not hesitate to say that, in a clear case of hypothecation, the pledger may vote. The possession may well continue with him, consistently with the nature of the contract; and the stock remain in his name. Till enforced, and the title made absolute in the pledgee, and the name changed on the books, he should be received to' vote. It is a question between him and the pledgee, with which the corporation have nothing to do. Ex parte Holmes has been relied on as governing this case: but there the shares stood in the names of persons who were trustees for *the corporation. They were designated as trustees. Literally, they might have voted: but we allowed it to be shown that they were trustees. To give the transfer books such a binding effect as to shut out all inquiry in every case, might enable the directors to control the election through the funds of the institution. We never intended by that decision, to open an inquiry into every case of hypothecation.
H. B. On an inquiry by the counsel for the present acting directors, whether it would be considered lawful for the inspectors to be candidates for the direction ; the justices answered in the affirmative.
Bule, “ That the election held upon the 3d day of July last, for nine directors of the Utica Insurance Company, *412 be vacated and set aside; and that a new election for directors of the said company be held pursuant to the charter and by-laws of the said company; and that the same be held within thirty days.’’

 Rex v. Miller, 6 T. R. 278, per Ld. Kenyon, Ch. J., and Rex v. Bellringer, Here cited.

 Id. & vid. 2on Corp. ill.

 1 Kyd on Corp. 401, 411 Cowp. 538, per Ld. Mansfield, Ch. J.

 1 Kyd on Corp. 401. 4 T. R. 822, 23, per Ld. Kenyon; and the cases there cited.

 In the first, and I believe, the only edition of Kyd on Corporations, author remarks, that, “ At common law, independently of any specific * . constitution, when the power of acting is entrusted to any specific number of persons, whether definite or indefinite, any number of the whole body, however minute, is sufficient to form a legal assembly, if all be properly summoned to attend.” He instances the house of commons composed of 558, any number of which, 40, for instance, form a house. If this learned writer intended to include bodies of men, empowered to act judicially, he certainly spoke against what is" now, at all events, the settled law. Not only a majority, but the whole number of such a body must, convene; though when convened, a majority may decide.
In saying so of any integral part of a corporation, hg admits that, he is at issue with what he insists was an abstract proposition of lord Kenyon, ip Rex v. Bellringer, (4 T. R. 810.) This was, that where the number of the integral part is definite, there must be a major part of the whole number constituted by the charter, in order to make the elections, and do the several acts under it. In. that case, the chartgr expressly authorized the major part of the common council, 36 in number, to make the election. The defendant was elected a member by 18, the whole surviving number of the council. The election was pronounced void, on pleading, upon information in nature
*410 of a quo warranto. Mr. Kyd assumes that words conferring a power to act, on a majority of a definite number, by the words they, or a majority of them, or the like, are restrictive; and had been held by the cases to mean (what he admits is counter to the grammatical construction of the words) “not less than a majority." He therefore puts Rex v. Bellringer among the cases which went upon the restrictive nature of those words; hence infers that lord Kenyon was speaking obiter; rejects his position; and winds up with stating the general rule, “ That where no mention is made" (in the charter) “ of the major part, either in the case of a definite or indefinite body, any number duly assembled, however small, is sufficient to form a corporate assembly." He admits that where the number is indefinite, the clause of the “ major part" is inoperative. (Vid. 1 Kyd. on Corp. 418 to 425.)
How, admitting that some of the former cases had gone upon the special words, “ the major part," is it not quite as natural to suppose that lord Kenyon, in the case cited, intended to bring them all back to the grammatical sense; the sense which prevailed when they were applied to an indefinite number; and, we may add, to their common sense, by denying all restrictive effect in both cases ? H so, his proposition was not an abstract one. He adopted the idea which Mr. Kyd himself hints as probable; (id. 423;) that these words were introduced through more abundant caution, to avoid the possible inference that without them, the presence of the whole body might be required. In this view, lord Kenyon was speaking within the record; and the case of Rex v. Bellringer, must be considered as a direct authority for the proposition in question. Almost any lawyer, too, I imagine, would concur with lord Kenyon, that he was borne out in his proposition by the dictum of lord Mansfield, in Rex v. Varlo, (Cowp. 250.)
Rex v. Bellringer was decided in 1192. In 1193 and 1194, Mr. Kyd’s treatise was published. With that before them, the king’s bench continued to reason in the same way. In 1195, Rex v. Miller, (6 T. R. 268,) came before that court. The mayor of Horthampton was, by statute charter, to be elected by 48 burgesses, as one of the several integral parts of the corporation. The burgesses were reduced to 19 when the defendant was elected mayor; only 3 of whom assembled on that occasion. The town received a royal'charter subsequent to its statute incorporation; but the former was laid out of view as void; the latter standing in its way at the time. The question was upon the validity of the election, on pleadings, upon information in nature of a, quo warranto. All the judges spoke to the question; and three of them expressly recognized the proposition in Rex v. Bellringer, which Mr. Kyd questions as abstract. The words, “ or the major part of them,” may now, therefore, be considered as mere surplusage, when ap-
*410-1 plied to a corporate body, either of a definite or indefinite number. (Vid. 6 T. R. 278 to 281, per Ld. Kenyon, C. J., Grose and Lawrence, Js.)
I observe that Mr. Dane, of Massachusetts, in his late abridgment, puts the two cases above cited from the Term Reports, on general principles, not the words of the charter. He illustrates these cases thus: “If the charter require 12 common council men, &e., to elect or do an act, 7 of them at least must be present; though 4 of the 1 may give the vote; and if 3 of the 12 .die, still 7, a major part of the whole 12, must meet.” (5 Dane’s Abr. 150.)