## BUELL v. BUCKINGHAM & CO.

1. TRUST: PURCHASE BY A TRUSTEE. A purchase of property by a trustee of his *cestui que trust* is not void in equity, but is voidable. Such sale will be set aside for fraud, or upon a very slight showing of advantage or bad faith. But when it is clear that the *cestui que trust* intended that the trustee should buy, and there is no fraud, no concealment, and no advantage taken by the trustee of information acquired by him as such, it will be upheld and enforced.

2. CORPORATION: QUORUM. A majority of a quorum of a board of directors of a corporation, at a meeting at which a bare quorum is present, may bind the corporation.

3. SAME. The by-laws of a corporation provided that the president and two directors should constitute a quorum of the board. At a meeting at which the president and but two of the directors were present, a sale of the property of the corporation was made to the president. *Held*, that the sale was not invalid for want of power.

4. SALE AND GENERAL ASSIGNMENT. An absolute sale of all his property by an insolvent debtor, if made in good faith and for a valuable consideration, without any contingent interest remaining in the grantor. will not be treated as a general assignment void for the preference of creditors.

5. CORPORATION: SALE OF REAL ESTATE. A board of directors of a corporation invested with general powers to make contracts may make a valid sale of the real estate of the corporation.

*Appeal from Clinton District Court.*

WEDNESDAY, JUNE 8.

IN March, 1860, the defendants recovered judgment against the Lyons Steam Mill Manufacturing Company, a corporation under the laws of Iowa, for $565 and costs, upon which execution was issued, and was levied on the manufacturing establishment, it being described as the south half of block eight in range two of Buell's addition to Lyons, and appurtenances; and the same was advertised for sale.

On the 27th of February, 1858, at a meeting of the board of directors of the corporation, at which Elijah Buell, president, and Robert Buell and Robert Spear, directors, were alone present (a quorum, under the by-laws, being the president and two directors), and they were the only stockholders at the time—the property levied upon was sold to Elijah Buell, in consideration of an indebtedness by the corporation to him of $7,647.75, for money theretofore advanced by him for the corporation in building the mills, and an agreement by him to pay other debts of the corporation, amounting to $1,872.57, which he afterwards did pay. Elijah Buell had sold the land to the corporation for $2,000, to be paid in stock, which, he claims, was not paid at the time of the conveyance to him; and the consideration named in the deed by the corporation to him was $12,000. The property is proved to be worth, at the time of sale to Buell, between five and six thousand dollars. The deed was signed by Elijah Buell, president, and Robert Spear, secretary. Elijah Buell afterwards sold and conveyed the property to the plaintiff, who brought this suit to enjoin the sale under the defendant's execution.

At the trial the injunction was made perpetual, and the defendant's appeal.

*A. R. Cotton* for appellant.

I. E. Buell could not be counted as a member at the time of the sale for the purpose of making a quorum, and at the same time act as a grantee in a sale made by the board at such meeting. 2 Kent., 299, marg.; Ang. & A. Corp., § 291; *Rex* v. *Lizzard*, 17 Eng. Com. L., 193; *Wiggin* v. *The Free Will Baptist Church*, 8 Met., 301; *Michoud* v. *Girod*, 4 How., 503; *Wormley* v. *Wormley*, 8 Wheat., 421; *Davoue* v. *Fanning*, 2 Johns. Ch., 252; *Cumberland Coal Company* v. *Sherman*, 30 Barb., 553; *The Aberdeen Railway Company* v. *Blaikee*, 1 McQueen, 461; *Rollins* v. *Clay*, 33 Me., 132; *Cole* v. *Dealham*, 13 Iowa, 554.

*Grant & Smith* for the appellee, after reviewing the authorities cited by the appellant, stated the following propositions and cited the following authorities:

I. A purchase of land by a trustee, of his *cestui que trust*, is not void in equity, but only voidable at the election of the *cestui que trust* within a reasonable time. *Costen's Appeal*, 13 Pa., L. R., 292; Hill on Trust, 159, marg.

II. A corporation may sell lands. Code of 1851, § 674; 2 Kent, 282; Grant Corp., 129; Kyd. Corp., 108; Ang. & Ames Corp., § 187; *The People* v. *Mauvran*, 5 Denio, 389.

III. The sale to Elijah Buell was not a general assignment of an insolvent for the benefit of creditors. *Cowles & Co.* v. *Ricketts*, 1 Iowa, 582; *Burrows et al.* v. *Lehndorff*, 8 Iowa, 104; *Sargent* v. *Webster*, 13 Met., 497; *Barr* v. *Hatch*, 3 Ohio, 527.

IV. A contract, with sale or payment by a board of directors or a committee, to one of its own number, is valid. *Sawyer* v. *Methodist Episcopal Church*, 18 Verm., 405; *Green* v. *The School District, &c.*, 6 Id., 76; 1 Story Eq. Jur., § 308.

COLE, J.—I. There is no showing of any actual fraud on the part of Elijah Buell, in his purchase of the property from the board of directors. His position, as one of the board, was that of a trustee or guardian of the rights and interests of the stockholders in the corporation, and his purchase, while occupying that relation, cannot be regarded in a more unfavorable light than a purchase by a trustee, of the property of his *cestui que trust.* The rule is well settled, that a purchase of property by a trustee, of his *cestui que trust*, is not void in equity, but only voidable at the election of the *cestui que trust.* A court of equity will scrutinize such a transaction closely, and will not only set it aside for fraud, but will do so upon a very slight showing of advantge or of bad faith. But when it is clear that the *cestui que trust* intended that the trustee should buy, and there is no fraud, no concealment, and no advantage taken by the trustee, of information acquired by him as such, the purchase will be upheld and enforced.

In this case, it appears that Elijah Buell purchased the property at the request of the other directors, who, together with himself, constituted all the stockholders; that he paid nearly, or quite, twice the value of the property, and although the debt due him was considerably more than the real value of the property, yet he agreed to, and did pay, for the corporation near two thousand dollars more, besides surrendering his claim for the purchase price of the land upon which the mills were erected. In view of the facts, then, that the purchase made by Elijah Buell was at the instance of the *cestui que trust*, for a full and valuable consideration; and without any fraud, concealment, or advantage taken of his position, such purchase will not be set aside on account of his position as director or trustee.

II. A further question is, however, presented in this case, as to the power of a bare quorum of the board of directors to make a sale of the property of the corporation to one

of their number. Section three of the by-laws of the corporation provides that the president and any two of the directors shall form a quorum for the transaction of business, and that a less number may adjourn, &c. In this case, although the requisite number of directors was present, Elijah Buell was disqualified from acting in the matter of the sale to himself; and the question then is, can a majority of the quorum, which is itself but a bare majority, do a binding act? Upon this[3] point Chancellor KENT says: "There is a distinction taken between a corporate act to be done by a select and definite body, as by a board of directors, and one to be performed by the constituent members. In the latter case, a majority of those who appear may act; but in the former, a majority of the definite body must be present, and then a majority of the quorum may decide." 2 Kent's Com., 293. Mr. DANE illustrates the same rule, as follows: "If the charter requires twelve common councilmen to elect or do an act, seven of them at least must be present, though four of the seven may give the vote," &c. 5 Dane's Abridg., 150; see, also, Angell and Ames on Corp., § 571. *Cahill* v. *Kalamazoo Insurance Company*, 2 Doug. (Mich.), 124. *Sargent* v. *Webster*, 13 Met., 497; *In re Insurance Company*, 22 Wend., 591; *Ex parte Willcocks*, 7 Cow., 402.

It follows then, in the light of these authorities, that since the president and two of the directors constituted a quorum, it was competent for two, being a majority of that quorum, to bind the corporation; and if two were able to act, even as against the opposing vote of the other, they could, *a fortiori*, act without his concurrence. Again, the ordinary duties of the president are to preside, determine questions of order, give the casting vote in case of a tie, &c.; and since the vote of the directors was unanimous, there was no occasion or opportunity for the president to cast his vote, even if he had not been disqualified; and the con-

tract of sale was made by just as many directors as was required by the by-laws, or as it was possible to have in the corporation as constituted.

III. There is no evidence in the case, that the corporation was insolvent, or that the sale to Elijah Buell embraced all its property; but if such facts were shown, since the transaction was an absolute sale in good faith for a valuable consideration, and not a mortgage, or pledge, or assignment, with any contingent interest remaining in the grantor, it cannot, under the former decisions of this Court, be held to be a general assignment, and, therefore, void. Code of 1851, § 977; *Cowles & Co.* v. *Ricketts,* 1 Iowa, 582; *Fromme* v. *Jones,* 13 Iowa, 474.

IV. The objection that the directors had no authority to sell this real estate, for the reason that the power to sell real estate was not expressly mentioned in the articles of incorporation, is not well founded. The law under which this corporation was organized, in defining the powers which such corporation should possess, expressly confers the power "to make contracts, acquire and transfer property, possessing the same powers in such respects as private individuals now enjoy." Code of 1851, § 673. Subdivision sixth, article nine, of the by-laws, provides "that said corporation is hereby empowered to make contracts, purchase, receive and hold such real estate as may be necessary and convenient in accomplishing the objects for which the corporation is created."

It is thought that the grant of power to "make contracts" is quite broad enough to give the authority to make the contract of sale in this case.

DILLON, J.—The purchase of the mill property by Elijah Buell of the company, is free from any taint of actual fraud. He was an admitted creditor on the books of the company to the extent of $7,647.75. Besides this, they

owed him for debts contracted for the company, nearly two thousand dollars more; and these sums, with interest, amounted, at the date of the purchase, to about $12,000. In payment of this he received the deed of the property on the 27th of February, 1858, the cash value of which, according to the testimony of Spear, was $5,000 or $6,000.

It is claimed that the sale of the property to Elijah Buell was invalid, because he was one of the directors who made the sale and authorized the execution of the deed. This is the great and only question in the case. It is not free from doubt, both upon reason and upon authority. I proceed to state, as concisely as may be, my views of the case. At the time of the sale, February 27th, 1858, the defendants were general creditors of the company, but had no judgment. The whole stock of the company had centered in and was owned by Elijah Buell, who was president, and Robert Spear and Robert Buell, who were directors. There were no other stockholders and no other directors in existence.

By the by-laws it was provided that "the president and any two of the directors shall form a quorum for the transaction of business."

The board of directors then, had the exclusive power to manage the business of the company. In such cases the sole right is in the directors, and not in the stockholders as such. *McCullough* v. *Moss*, 5 Denio, 575.

Certainly, as respects stockholders, and perhaps also as respects creditors, the directors (who are the trustees or agents primarily of the stockholders, who are the *cestui que trusts*), can make no valid disposition of the corporate property, except in conformity with the requisites of the articles of incorporation, the by-laws and the general laws of the land. *Beatty* v. *Marine Ins. Co.*, 2 Johns., 110; *Hoyt* y. *Thompson*, 1 Seld., 320, 331.

Three constituted a quorum. So far all is clear. Ad-

vancing in the argument, the first proposition I lay down is, that a majority of the quorum, all being present, have the power to act, and to decide any question upon which they can act. This proposition is clear upon the authorities. Thus, in *Rex* v. *Monday*, Cowper, 538, Lord MANS-FIELD, Ch. J., says: "When the assembly are duly met, I take it to be clear law, that the corporate act may be done by the *majority* of those who have once regularly constituted the meeting." To same effect, 2 Kent Com., 293. "A majority of the quorum may decide." A. & A. on Corp., § 501; *Cahill* v. *Kalamazoo Insurance Co.*, 2 Doug. (Mich.), 124; *Sargent* v. *Webster*, 13 Met., 497; *In re Insurance Co.*, 22 Wend., 591; *Ex parte Willcocks;* 7 Cow., 402; Id., 527, note (*a*). See also as to quorums and majority in legislative proceedings on the passage of laws. *Southwark* v. *Palmyra Railroad Co.*, 2 Mich. (Gibbs), 287; 4 Mo., 302; 32 Miss. (3 George), 650; 3 Am. Law Reg. (N. S.), 332, 345.

Now, if the act done was not invalid, as being contrary to the objects of the corporation (a question which will be alluded to presently), and if, as against the defendants, Elijah Buell, the purchaser, is to be counted as one of the quorum, then it is clear that the sale and deed to him are legally operative and binding upon the company and upon all persons whomsoever. This makes it necessary to discuss the nature of the relations which Buell and the defendants respectively sustained to the corporation.

In one respect, their relations were common and identical; they were both creditors. Their equities, in this respect, were equal and the same.

Being an officer in the corporation did not deprive Buell of the right to enter into competition with other creditors and run a race of vigilance with them, availing himself in the contest, of his superior knowledge and of the advantages of his position, to obtain security for, or payment of,

his debt. He has an advantage, it is true, but it is one which results from his position, and which is known to every person who deals with and extends credit to a corporation. This is one of the causes which has operated to bring corporate companies into discredit, and may constitute a good legislative reason for giving priority to outside creditors. But the Legislature must furnish the remedy. That the act of Buell was not legally or constructively fraudulent in consequence of his being an officer or member of the corporation, see *Whitewell* v. *Warner,* 20 Verm., 425, 444; A. & A. on Corp., § 390; *Gordon* v. *Preston,* 1 Watts, 386; *Sargent* v. *Webster,* 13 Met., 497; *Railroad Company* v. *Clayhorn,* 1 Spear's (Eq.), 562.

But in addition to being a creditor, Buell sustained to the company the relation of a stockholder and director. Such companies are essentially partnerships, except in form. "The directors are the trustees or managing partners, and the stockholders are the *cestui que trusts* and have a joint interest in all of the property and effects of the corporation." Per WALWORTH, Ch., in *Robinson* v. *Smith,* 3 Paige, 222, 232; 5 Id., 607; *Slee* v. *Bloom,* 19 Johns., 479; *Hoyt* v. *Thompson,* 1 Seld., 320.

The corporation is an artificial person, owning its property and necessarily acting by its agents; and these agents are the directors.

After much reflection, it seems to me that the correct view of Buell's position is this: He is a trustee, and the beneficiaries are the corporation, or in other words, the stockholders; or, what is in essence the same, he is an agent and the stockholders the principal.

If this is the relation, then the rules of law applicable to purchasers by agents and trustees, apply to the purchase in question. There is a manifest impropriety in allowing the same person to act as the agent of the seller and to become himself the buyer. There may be, in all such

cases, a conflict between duty and interest. Acting for himself, Buell's interest would be to obtain payment. Acting for the best interests of the corporation, his disinterested and ·unbiased convictions of duty might be to advise against a sale of the entire property to one creditor, or against any sale at all. It is in view of these considerations that, "the wise policy of the law hath put the sting of a disability into the temptation, as a defensive weapon against the strength of the danger which lies in the situation." Even these principles would not, in my judgment, apply to the case, if there had been a quorum without Buell.

Now the purchase of property by an agent or trustee, or by any person acting in a fiduciary capacity, is not void *ab origine* and absolutely. It is voidable only. It is made subject to the right of the principal or beneficiary, in a reasonable time, to say that he is not satisfied with it. It is valid in equity as well as law, unless the parties interested repudiate it, or complain of it; and these may set it aside without showing either fraud or injury.· *Bank of Old Dominion* v. *Dubuque Railroad Co.*, 8 Iowa, 277; *Davoue* v. *Fanning*, 2 Johns. Ch., 252; *Bostwick* v. *Atkins*, 3 Comst., 53, 60; 1 Parsons Cont., 75, 76, and cases in note: 1 Lead. Cases in Eq., 167; *MacGregor* v. *Gardner*, 14 Iowa, 326, 335.

As the principal or parties interested may confirm the sale, a *mere stranger* cannot make the objection, ·that the trustee was the purchaser; or that the sale was irregular. The remedy belongs only "to persons who had an interest in the property before the sale, and no other person can apply to set aside the sale." *Hawley* v. *Cramer*, 4 Cow., 717, 744; *Edmunson* v. *Welsh*, 27 Ala., 578; 5 Id., 428; *Hannah* v. *Carrington*, 18 Ark., 85; 16 Ala., 581; *Greenleaf* v. *Queen*, 1 Pet., 138; 5 Barr, 97; *Wightman* v. *Doe*, 24 Miss., 675.

Adopting this as the true view, it follows that Buell's participation in the sale and purchase of the property did

not make the same void. The utmost effect it could have would be to make the sale voidable at the instance of any person having an interest in the property sold. But the defendants being at that time general creditors, and having no interest in, or lien upon, the property, and there being no actual fraud, are not entitled to avoid the sale, simply on the ground that Buell was one of the three directors necessary to constitute a quorum. This, in my judgment, is the correct view to be taken of the case. But adjudged cases go farther (and it is possible some of them go too far), and sustain the purchase of Buell on broader grounds. I will refer briefly to some of them. Thus, it is held that if three persons are appointed a committee "to finish and repair a school house" (*Geer* v. *School District*, 6 Verm., 7.6), or to superintend the building of a church, they may: "as effectually bind the society by a contract concluded with one of their own number, as with a stranger." These cases were confirmed in *Rogers* v. *Danby Union Society*, 19 Vermont, 187, where the court say "there is perhaps some incongruity in thus allowing a person to act in a double capacity as an agent for a corporation contracting with himself. But whether a majority or the whole act, the party contracted with as well as any other, may participate in the bargain. Partiality so gross as to amount to fraud will, when sustained, defeat the contract." In these cases. the Court held the objection not good, even when made by the corporation. The case of *Hayward* v. *The Pilgrim Society*, 21 Pick., 270, shows that where the trustees are creditors of the society, and, therefore, interested, they may, nevertheless, vote that the treasurer execute a note to them for the amount, and it is valid.

In *Railroad Co.* v. *Clayhorn*, 1 Spear's (Eq.), 545, 562, the directors, in a corporation, indorsed certain notes, and then: voted a mortgage on the property of the corporation to indemnify them; and no actual fraud appearing, this was.

adjudged valid as against other creditors, and, of course, as against the corporation.

The Court say. "there is nothing in law or equity which forbids the directors of a corporation from contracting with it."

In the recent case of *The City, &c.*, v. *Alexander*, 23 Mo., 483, this same question was considered : A railroad corporation was indebted to Page and Bacon. Under the charter, four directors was the smallest number that could act. Of these four, Bacon, the creditor, was one, and the defendant, Alexander, another. A note of over one million and a half of dollars was voted to Bacon, to be secured by a deed of trust on the company's property, making Alexander the trustee. The bill was filed by the city, as a stockholder. Two judges only expressed opinions. SCOTT, J.: "In a matter of so great amount the law does not allow a man to judge for himself, or vote himself a trusteeship, the management of which may be a fortune." RYLAND. J., was of a different opinion. He referred to the fact that directors were frequently large creditors, and to their practice in passing on their claims for payments, &c.; he adds, "the right of a director to vote on a question in which he is interested, would seem to be inseparable from the doctrine that a corporation may contract with him." See A. & A. on Corp., § 233, and numerous cases cited. "I can see no reason why a member of the board of directors might not sit in the board, and without fraud, in conjunction with others, consent to an order, securing a debt already due him from the corporation." 23 Mo., 528 ; see Acc. R. M. Charlt., 260, 265 ; and *contra*, *Van Hook* v. *Somerset Manufacturing Company*, Halst. Ch., 137.

Without dwelling further upon these authorities (which are the principal ones on both sides that I have met with, directly bearing on the subject), I conclude that, as all the stockholders were in the case at bar represented at the sale,

and were satisfied with it, as it is not fraudulent in fact, and as the defendants were not interested in and had no lien on the property, the purchase thereof by Buell was binding upon the corporation, and is valid as to the defendants.

Nor do I accede to the correctness of another of the defendants' propositions. They contend that, as the sale to Buell embraced the whole property of the company, or at least the bulk of the property, it amounted to an assignment for the benefit of creditors; and also that such a sale is contrary to, and would defeat the objects of the association, and, therefore, it is not in the power of the directors to make it. Now, this corporation possessed all the powers of a private person in regard to the disposition of its property. Code, 1851, § 674. It had the absolute *jus disponendi.* 2 Kent, 281, 282; A. & Ames on Corp., 186.

A private person could make a transfer of all its property in payment of one creditor, if it was done *bona fide. Cowles* v. *Ricketts,* 1 Iowa, 582.

That this corporation could do likewise, through the agency of its directors; that such a disposition by them would be binding, and would not have the effect to end or dissolve the corporation, is clear upon the authorities. *Town* v. *Bank of River Raisin,* 2 Doug. (Mich.), 530; *Revere* v. *Boston Copper Co.,* 15 Pick., 351; *Boston Glass Co.* v. *Langdon,* 24 Pick. 49; *State* v. *Bank of Maryland,* 6 Gill & J., 205; Id., 363; *Catlin* v. *Eagle Bank,* 6 Conn., 233, 242; *Sargent* v. *Webster,* 13 Met., 497; 1 Am. Lead. Cases, 95, and other cases there cited; *Russell* v. *M'Lellan,* 14 Pick., 63.

The interesting nature of the question above discussed, is the reason why I have examined some of those so well presented in the opinion of Mr. Justice COLE, which has just been pronounced. I fully concur with him in the decision of those questions which are not referred to in the foregoing opinion. Affirmed.