## WORTHEN v. GRIFFITH.

## Opinion delivered November 3, 1894.

1. *Fraud—Withholding assets from assignment.*

    The fraudulent withdrawal by a director of a mercantile corporation of a portion of its assets for his own use, done at a time when the corporation was insolvent, and in contemplation of an assignment, will not, of itself, invalidate a subsequent partial assignment for the benefit of creditors, if the latter does not in any way promote or cover up the acts of such director in reference to such withdrawal.

2. *Fraud—Intention to evade statute of assignments.*

    A deed of assignment for the benefit of creditors, executed by an insolvent corporation, is not rendered invalid by the fact that, on the day it was executed, the corporation confessed judgments in favor of *bona fide* creditors preferred therein, and immediately afterwards entered its appearance to a suit in chancery brought by the assignee and the preferred creditors, and consented that the assignee should be appointed receiver of the assigned property, with the intention that the property assigned should be sold under an order of the court, on terms different from those provided by the statute regulating assignments; as, if the appointment of a receiver was unauthorized, still the intention to bring an unauthorized suit will not invalidate an otherwise valid assignment.

3. *Corporate assets—When a trust fund.*

    It is only when a court of equity, at the instance of a proper party and in a proper proceeding, has taken possession of the assets of an insolvent corporation that its assets may in this State be properly said to be a trust fund for its creditors.

4. *Assignment—Corporation—Preferences.*

    A deed of assignment executed by a corporation, and containing preferences,* is not rendered invalid by reason of the fact that two of its directors were liable as indorsers upon certain notes which constituted a portion of the corporation's valid indebtedness preferred by the assignment.

Appeal from Pulaski Chancery Court.

DAVID W. CARROLL, Chancellor.

---

*Executed prior to the act of April 14, 1893, forbidding preferences among its creditors by an insolvent corporation. (Rep.)

STATEMENT BY THE COURT.

The facts in this case are, in substance, as follows : The F. P. Gray Dry Goods Company, a corporation created under the laws of this State, being in failing circumstances and insolvent, by its president, acting under the authority of the board of directors, executed, on the 12th day of May, 1891, a deed of assignment to Joseph Griffith for the benefit of its creditors, by which it conveyed to him a stock of merchandise in Little Rock, certain store fixtures, a safe and office furniture, one horse and a delivery wagon, and certain notes and accounts described in a schedule thereto attached. By the terms of the assignment, the assignee was to pay : *First*, the cost of administering the trust; *second*, various sums to W. B. Worthen & Co. amounting to about twenty-two thousand dollars, to Wolf & Bro. twenty-two hundred and seventy-three dollars and eighty-nine cents, and to the Gazette Publishing Co. three hundred and ninety-one dollars and one cent; *third*, after paying above debts in full, the deed of assignment provided that the residue of the proceeds of the assigned property should be applied equally to the payment of all the other debts of said company, without any preference whatever. At the time this assignment was executed, the stockholders of said company were James A. Gray, F. P. Gray and L. L. Boone. The board of directors was composed of the same persons, and F. P. Gray was president of the company. The assignee gave bond, and took possession of the assigned property. On the same day that the assignment was executed, said company, by its president, acting under authority of the board of directors, confessed judgments in the Pulaski circuit court in favor of W. B. Worthen & Co. and Wolf & Bro. for the amount due each of them respectively. Executions were at once issued on these judg-

ments, and were placed in the hands of the sheriff, either just before or just after the delivery of the deed of assignment. The appellants, W. B. Worthen & Co. and Wolf & Bro., on the same day that said assignment was executed and judgment confessed, filed their complaint in the chancery court of Pulaski county against said Joseph Griffith and the dry goods company, alleging the fact of the assignment, judgments and executions; that the property consisted of a great variety of goods and merchandise, that many of the goods were perishable, that it would be greatly to the interest of all the creditors to have the trust managed under the control and direction of the chancery court, so that purchasers might be assured that they would obtain a good and reliable title to the property sold; and praying that the assignee might be invested with the power of a receiver to take charge of the assigned assets, and, under the order of the court, distribute the proceeds as provided in the deed of assignment, and for other proper relief.

The defendant Joseph Griffith and the dry goods company, on the same day the complaint was filed, entered their appearance, and consented to the relief prayed, and thereupon said Joseph Griffith was appointed receiver by the court, and ordered to advertise for bids for the sale of the assigned property.

Afterwards, Burnham, Hanna, Munger & Co. and other creditors filed their intervening petitions, reciting the fact of said assignment, judgment and appointment of a receiver, and alleging that the assignment was fraudulent and void, that, at the time of the assignment, and long before, the said dry goods company was insolvent and unable to pay its debts, that the assignment, judgment and application for a receiver was a part of a general scheme to cover up the assets of the dry goods company; that, for a long time previous to said confession of judgment and assignment, the officers of said company

had been fraudulently disposing of its property, and se-
creting and withdrawing it from the assets of the corpo-
ration, and appropriating it to their own use ; that Wor-
then & Co. held the notes of the dry goods company for a
portion of the indebtedness claimed to be due them, and
that said F. P. Gray and Jas. A. Gray, two directors,
were individual indorsers on said notes, and that, for
other debts not so indorsed, F. P. Gray had deposited
property with said Worthen as collateral security ; that,
in order to relieve said individual liability of said F. P.
and James A. Gray, said dry goods company had pur-
chased large amounts of goods, in order that the same
might be included in the assignment, so as to pay off the
debts of said preferred creditors ; that both James A.
and F. P. Gray attended the meeting of the board of di-
rectors which authorized said assignment and confession
of judgment, and voted for the same.    They further al-
leged that they had brought suit in the Pulaski circuit
court against said dry goods company and had caused
writs of attachment to issue, which had been placed in the
hands of the sheriff of Pulaski county, but that, as the
assets were in the hands of a receiver, no levies could be
made.    They prayed that the assignment, judgment and
application for a receiver be declared void, and that a
sufficient amount of the proceeds of the sale by the re-
ceiver be paid over to the intervenors to satisfy their
claims, and for other relief.

The appellants, W. B. Worthen & Co. and Wolf
& Bro., filed separate responses to the intervening peti-
tions, admitting that F. P. Gray and James A. Gray,
directors, were indorsers on some of the notes due
Worthen & Co., and that F. P. Gray had also deposited
a small amount of property as collateral security for the
payment of those notes, but denying the other material
allegations of said intervening petitions, and alleging

that the amounts for which they recovered judgment were justly due.

The case was heard on the pleadings, exhibits and depositions. The chancellor found that the assignment was fraudulent, both in fact and law, and declared that the same was void, and ordered the proceeds of assets in hands of the receiver distributed, first, to the payment of the claims of the intervenors who had filed attachment suits, and, after the payment of these claims, the remainder of the funds to be distributed in accordance with the decree. Although the assignment was held void, the chancellor found that debts claimed by Worthen & Co. and the other creditors preferred by the assignment were justly due from the dry goods company and ordered that they be allowed a share in the distribution of the remainder of the proceeds left after paying claims of creditors that had filed attachment. Worthen & Co., Wolf & Bro., and Joseph Griffith appealed from the decree.

*Rose, Hemingway & Rose* and *Jacob Erb*, for appellants, Worthen, Griffith and Gazette Publishing Co.

1. The fact that two of the directors had endorsed some of the notes, and had pledged individual personal property to secure some of them, does not render the assignment invalid. An insolvent corporation may make an assignment and prefer creditors, just as an individual. 150 U. S. 371; 58 Fed. 286; 35 *id.* 167; 84 N. Y. 199; 52 *id.* 685; 4 Ark. 303; 13 *id.* 575; 28 *id.* 82; *Ib.* 429, and other cases from twenty-six States. Circumstances of suspicion are not sufficient to invalidate it. 38 Ark. 427; 50 *id.* 47. The motives cannot be inquired into, further than to show a fraudulent intent. Bump, Fr. Conv. p. 189; 22 Tex. 708; 75 Am. Dec. 812; 16 Oh. St. 439; 32 N. Y. 214; 19 Pa. St. 61. All the cases holding a contrary doctrine rely on Mr. Justice Story's

dictum in 3 Mason, 308. But later decisions do not sustain the doctrine. 50 N. W. 1117 ; 102 U. S. 161 ; 133 U. S. 534 ; 91 U. S. 589. Review 9 Fed. 532, where it is held that a corporation cannot prefer a director, and cases following it (25 Fed. 586 ; 35 *id.* 433 ; 23 Mo. App. 525 ; 39 *id.* 139 ; 5 Sawy. 403 ; 26 N. W. 186), and contend that the better rule is laid down 52 Fed. 680 ; 23 Fed. 432 ; 57 *id.* 375 ; Burrill, Assignments, sec. 64. Most of the cases holding assignments void where directors of a corporation are secured have taken their cue from 2 Morawetz, Corporations, secs. 802–3. But the courts have not followed him. 102 U. S. 160, and cases *supra.* The following cases hold that an assignment is not invalidated by reason of directors endorsing the paper, or pledging individual property to secure same. 72 Iowa, 666 ; 1 Spear's Eq. (S. C.) 545 ; 70 *id.* 697 ; 7 Atl. 514 ; 16 Iowa, 284 ; 80 Iowa, 291 ; 1 Watts, 385 ; 60 Pa. St. 314 ; 78 Va. 737 ; 47 Conn. 54 ; 86 Ky. 206 ; 6 Conn. 233 ; 90 Mich. 345 ; 35 Fed. 161. The last case is an indorsement by directors.

2. The validity of the assignment is not affected by the fact that F. P. Gray took out of the funds money that was not accounted for. If he acted fraudulently, he was acting in his own interest, and not in that of the company ; and in such case the corporation had no notice of his acts. 25 Conn. 446 ; 12 Ala. (N. S.) 502 ; 22 Pick. 30 ; 41 Conn. 255 ; 6 So. Law Rev. 816 ; 34 Fed. 727 ; 70 Wis. 272 ; 133 U. S. 690. This was only a partial assignment. 122 U. S. 450 ; 4 U. S. App. 72 ; *Ib.* 403. See also 34 N. E. 1088. The same rule applies to subsequent acts of the assignor. 18 Ark. 124 ; *Ib.* 172 ; 54 *id.* 124.

3. The confession of judgment, deed of assignment, and application for receiver, taken together, do not invalidate the assignment. Cooley on Torts, p. 468 ; 54 Ark. 129 ; 18 *id.* 124 ; *Ib.* 172. The receiver was properly

appointed. 38 Ark. 439; 54 Ark. 124. Even if the chancery court was without jurisdiction, the interventions supplied the defect. 48 Ark. 312.

*Sanders & Cockrill* for intervening creditors.

The assignment was fraudulent, in fact, and in law, because:

1. The confession of judgment, the deed of assignment and the application for a receiver, constituted the assignment in fact, and was a fraud upon, and a violation of, our statute of assignments. Mansf. Dig. sec. 8; 37 Ark. 150; 1 McCrary, 176; 129 U. S. 136; 120 Ill. 208; 5 Cow. 547; 20 Fed. 801; 52 Ark. 30.

2. The assignment preferred the directors who authorized it, as against other creditors. 1 Macq. S. C. App. 461; 38 A. & E. Corp. Cas. 120; 42 *id.* 605; 64 Wis. 639; 26 *id.* 485; 4 Cliff. 375; 18 S. E. 107; 17 *id.* 968; 38 A & E. Corp. Cas. 164; 11 So. 365, 370; 25 Fed. 586; 35 *id.* 433; 36 *id.* 212; Cook on Stockholders, (ed. of 1894) sec. 661; 23 N. E. 339; 4 How. (U. S.) 555; 13 Ark. 563; 9 Fed. 532; 16 R. I. 597; 39 N. Y. 207; 43 N. H. 263; 15 How. (U. S.) 307; 91 U. S. 588; 5 Sawy. 403; 45 Fed. 7; 44 *id.* 231; 23 Mo. App. 229; 4 Cliff. 375; 1 Holmes, 433; 70 Iowa, 697; 132 Ill. 81.

3. Because the corporation, through its president and general manager, F. P. Gray, in view of said assignment, withdrew a considerable proportion of its assets, and appropriated them to the use of the said F. P. Gray, president and general manager, with the fraudulent intent to defraud and delay its creditors in the collection of their debts. 7 Wend. 31; 130 Mass. 445; 55 Iowa, 594; Wait, Insolv. Corp. sec. 9.

4. The creditors who procured attachments were entitled to priority. 53 Ark. 81; 2 Wall. 249; 49 Ark. 118.

5. Directors of a corporation stand in the relation

of trustees, and cannot deal with it for their individual benefit.   35 Ark. 304.

C. B. Moore and Dan W. Jones & McCain for non-attaching creditors.

The assets should have been distributed ratably among the creditors, and the court erred in preferring the attaching creditors.  1 Paige, 568; 110 U. S. 710; 24 How. 352; 126 U. S. 27; 1 Story, Eq. secs. 646–8; 39 Ark. 111; Bisp. Eq. sec. 525; 53 Ark. 87; 56 id. 1; 34 Ark. 329; Morawetz on Corp. sec. 861.

RIDDICK, J., (after stating the facts.)   The assignment in question in this case is assailed on several grounds.   We will first consider the question whether the evidence is sufficient to support the contention that F. P. Gray, president of the F. P. Gray Dry Goods Company, while contemplating an assignment by said company, purchased large quantities of goods, with a view to include them in said assignment, so that the preferred debts might be paid in full, and thus relieve himself of liability on his indorsement.   Outside of the fact that the dry goods company was in an extremely insolvent condition at the time of the assignment, and that Gray, who was himself insolvent, and of no worth, financially, was an indorser on some of its preferred notes, the only evidence directly bearing on this point was the testimony of witnesses Boone and Lambert. Boone was the secretary of the company.   He testified that he had a conversation with Gray when he started for New York in March before the assignment was made; that Gray said that he intended to buy very few goods; that afterwards, while in New York, he bought about twenty-two thousand dollars worth of goods, including a bill he had ordered from Kansas City just before he started for New York.   When asked, on cross-examination, whether the amount bought was materially larger than witness expected him to

buy, he replied: "I am not a judge of that, but I am
satisfied in my own mind, from what I heard him and
the clerks say, that he did not need near the goods."
On the other hand, Lambert, who was a manager of two
of the departments of the company's store, testified that
it was the custom of Gray to ask the heads of the differ-
ent departments what goods were needed, before going
on to purchase them; that, before leaving for New
York, in March previous to the assignment, Gray had,
as usual, asked him to state the amount of goods needed
for his departments. In the conversation, Gray instructed
witness "to make the order as small as possible, and not
to order any goods unless they were absolutely needed."
He further testified that Gray only purchased about
half the goods he requested him to purchase. Gray re-
turned from New York the latter part of March, and
the assignment was made on the 12th of May following
—about a month and a half after his return.

We do not think this evidence sufficient to show that
Gray contemplated the assignment at the time the goods
were purchased, or that he made the purchase with the
intention not to pay for the goods. But if such an inten-
tion on the part of Gray was shown, it is doubtful if any
one, except the creditors from whom such goods were
purchased, could complain, and there is nothing in the
pleadings or the proof to show us from whom goods
were purchased at that time.

1. As to with-
holding assets
from assign-
ment.

The evidence does show that when the company
became hopelessly insolvent, and it was apparent that a
failure was inevitable, Gray, a few days before the assign-
ment was executed, and with a view of making the assign-
ment in question, withdrew about seven hundred dollars
of cash from the assets of the company, and appropriated
it to his own use. Did this make the assignment void?
It was said, in the case of *Hill* v. *Woodberry*, 4 U. S.
App. 72, a case involving the validity of an assignment

made in this State, that "a fraudulent disposition of
property invalidates a subsequent assignment for the
benefit of creditors only when the deed of assignment is
part of a scheme to defraud creditors, and the provisions
of the deed are calculated to promote that object." The
assignment executed by the dry goods company was only
a partial assignment. It did not pretend to convey to the
assignee all the assets of the company, and the funds
appropriated by Gray were not included in the assets
conveyed by it. We do not see that the assignment
tended in any way to promote or cover up the acts of
Gray in reference to the withdrawal of such assets, and
we hold that its validity was not affected by such acts.
*Excelsior Mfg. Co.* v. *Owens*, 58 Ark. 561.

It is further contended that the confession of judg- 2. Intent to
evade statute
ment, the deed of assignment, and the application for a of assignment.
receiver, constituted the assignment in fact, and that
they were in violation of the statute regulating assign-
ments for the benefit of creditors, and were therefore
void. Of the five cases cited by counsel to support this
contention, three of them (*White* v. *Cotzhausen*, 129 U.
S. 329, *Preston* v. *Spaulding*, 120 Ill. 208, and *Hahn* v.
*Salmon*, 20 Fed. 801) are cases which arose under stat-
utes forbidding preferences in assignments by insolvent
debtors. These cases were controlled by the rule,
which seems to be well established, that where such
statutes exist, an insolvent debtor, contemplating a gen-
eral assignment, will not be allowed to evade the statute
by executing a mortgage or confessing a judgment in
favor of one or more of his creditors whom he wishes to
prefer. Such a preference in a general assignment
being in those States forbidden by the letter of the law,
it is properly held that preferences by a mortgage or
judgment made in contemplation of an assignment are
equally against its spirit and void, for, to quote from
the opinion in one of those cases, "courts are not to be

misled by mere devices or baffled by mere forms." In the case of *Richmond* v. *Mississippi Mills*, 52 Ark. 30, the court only announced the general rule that courts will look, not only at the name, but at the substance of the instrument, and the intention of the parties, in order to determine what the instrument is. In *Mackie* v. *Cairns*, 5 Cow. 547, the other case cited by counsel, the deed of assignment contained a provision that the trustees should pay the grantor for his support, out of the proceeds of the property assigned, a sum not exceeding two thousand dollars per annum. Afterwards, the assignor, being apprehensive lest the assignment should be held void on account of this reservation in his favor, confessed a judgment in favor of the trustees named in the assignment for the benefit of the preferred creditors. It was held that an insolvent debtor can make no assignment of any part of his property in trust for himself, and that if the security for the benefit of creditors contain such a provision, or be intended to come in aid of another security containing such a provision, it is void. The assignment was therefore declared void because of this reservation in favor of the grantor, and the judgment was also held to be void because the court found that the object and intention of it was to carry out and sustain an illegal assignment.

These cases can have but small weight here, for the assignment before us does not reserve any benefit to the grantor, and it does not contravene the policy of our law, for we have no statute forbidding preferences. In this State the debtor, having the absolute right to prefer one or more of his creditors, may do so by assignment, mortgage or judgment, or in any other legitimate way. If, at or about the time he executes an assignment preferring certain creditors, he also confesses judgment in their favor, the court may properly scan such acts of an insolvent debtor closely, to see that no fraud is

perpetrated under the pretense of securing a debt. But. when it is found that the judgment is based on a valid debt, which is also preferred in an assignment executed. in due form, and otherwise legal, then, to declare them void, we are forced to hold that although, standing alone, each would be valid, yet, taken together, both would be bad. To such a conclusion we cannot come.

But it is said that, at the time the assignment was. executed and the judgments confessed, the parties inter- ested intended to apply to the chancery court for the appointment of a receiver that the goods assigned might. be sold on terms prohibited by the statute, and that this intention made the assignment in law fraudulent and. void. The question whether the chancellor erred in appointing a receiver, and in taking jurisdiction over the assets assigned, is not before us in this case. The ap- pellees appeared, and, by proper petitions, became par- ties to the action, and, without any demurrer or objection to the jurisdiction of the court, submitted the case on its. merits, and it is not necessary now to determine the question of the regularity of the appointment of the re- ceiver. But if it be conceded that the appointment of a receiver was, under the circumstances, unauthorized, still we cannot adopt the view that the intention to bring an unauthorized suit is such a fraud as will invali- date an assignment in other respects valid. We do not think that an intention, based on a mistaken view of the law, should be followed by such severe consequences.

This brings us to the question whether the assign- ment was rendered invalid by reason of the fact that F. P. and James A. Gray, two of the directors of the dry goods company, were interested as indorsers on some of the notes to Worthen & Co., which constituted a portion of the indebtedness preferred by the assignment. It will be necessary, therefore, to consider the question of the powers of corporations to make assignments, and to pre-

fer creditors, under the laws of this State. In the old case of Ex parte *Conway*, 4 Ark. 304, this court first considered the question whether a corporation has, unless restrained by its charter, or some statute, the same power of disposing of its property by assignment as an individual under like circumstances has, or, in other words, quoting the language of the court, "whether the law places natural and artificial persons upon the same footing in regard to such assignments?" The conclusion reached by the court in that case was that a corporation has the same power of disposing of its property by assignment, and of preferring its creditors, that a natural person has, under like circumstances. In the later case of *Ringo* v. *Biscoe*, 13 Ark. 575, the same question was considered by the court, and the doctrine that an insolvent corporation has the same right to execute an assignment and make preferences among its *bona fide* creditors that a natural person has, under like circumstances, was re-affirmed in an opinion by Chief Justice Watkins. That a corporation in failing circumstances has the right to make an assignment and prefer one or more of its creditors has, in this State, never been doubted or questioned since the determination of those cases. But, outside of this State, the rule seems to be well established, and Mr. Burrill, in his work on Assignments, quotes with approval the language of Chancellor Walworth, in *De Ruyter* v. *Trustees of St. Peter's Church*, 3 Barb. Ch. 119, that "it appears to be settled, by a weight of authority which is irresistible, that a corporation has the right to make an assignment in trust for its creditors; and may exercise that right to the same extent and in the same manner as a natural person, unless restricted by its charter or some statutory provision." And he concludes the same section by saying that, "apart from statutory provisions, no distinction exists between an individual and a corporation in regard to the exercise of

the power to make preferences." Burrill on Assignments (6 ed.), sec. 45, pp. 64 and 65, where the authorities are collated.

If it be true that an insolvent corporation may prefer its creditors, and if it be also true that the debt due Worthen & Co. was an honest and *bona fide* debt, which the dry goods company had the right to contract, and that the indorsement by the directors was legitimate, then, upon what logical or reasonable ground, can we conclude that the dry goods company could not prefer this debt in making the assignment?

There are quite a number of cases decided by different courts that hold that the assets of an insolvent corporation constitute a trust fund, and that the directors will be treated as trustees holding this fund for the benefit of the creditors of the corporation. It is apparent that where this rule is adopted in its full extent, no preferences to any creditor can be made by an insolvent corporation, and so it has been held. The Supreme Court of Wisconsin, after laying down the rule that the directors and officers of an insolvent corporation are trustees for the creditors, says: "The directors are then trustees of all the property of the corporation for all its creditors, and an equal distribution must be made, and no preference to any one of the creditors, and much less to the directors or trustees as such." *Haywood* v. *Lumber Co.* 64 Wis. 646. This seems to be the logical and consistent result of what is known as the "trust-fund doctrine." To assert that the directors of an insolvent corporation hold its property as trustees, that it is a trust fund in their hands for the benefit of the creditors of the corporation, and at the same time to admit that they may prefer one creditor or one class of creditors, to the exclusion of others equally deserving, would seem to be both illogical and inconsistent. If the directors hold the assets of the corporation as trustees

3. The "trust fund doctrine" considered.

for the creditors, then each creditor has a right to his share in the proceeds of the assets of the corporation, and the directors cannot defeat this right. So soon as we admit that the director may prefer one creditor or class of creditors, and thus defeat the right of another creditor to his share in the assets, we come irresistibly, to the conclusion that the directors are not trustees for the creditors, nor the assets a trust fund, within the ordinary meaning of such terms, for the two positions are inconsistent and contradictory.

As the rule is firmly established in this State that a corporation, even though insolvent, may make preferences among its creditors, it is evident that it cannot be said that the property of a corporation in this State is a trust fund in the hands of its directors, in the strict and technical sense of such words. There may be a qualified meaning in which, at times, the assets of a corporation may properly be termed a trust fund, and this may be well illustrated by reference to certain opinions of the Supreme Court of the United States, in which the question has been considered. In the case of *Graham* v. *Railroad Co.* 102 U. S. 148, Mr. Justice Bradley, after referring to the contention that the corporation was a mere trustee holding its property for the benefit of its stockholders and creditors, said: "We do not concur in this view. It is at war with the notions which we derive from the English law with regard to the nature of corporate bodies. A corporation is a distinct entity. Its affairs are necessarily managed by officers and agents, it is true ; but, in law, it is as distinct a being as an individual is, and is entitled to hold property (if not contrary to its charter) as absolutely as an individual can hold it. Its estate is the same, its interest is the same, its possession is the same." The learned judge then proceeds to say that when a corporation becomes insolvent, a court of

equity may, at the instance of the proper parties, take charge of its assets, and administer them as a trust fund for the benefit of its stockholders and creditors. "The court," he says, "will then make those funds trust-funds which, in other circumstances, are as much the absolute property of the corporation as any man's property is his." In other words, as we understand that opinion, until a court, through its officers, takes charge of the property of the corporation, it has, even though insolvent, as complete control thereof as an individual would have over his property under like circumstances. In the late case of *Hollins* v. *Brierfield Coal & Iron Co.* 150 U. S. 385, Mr. Justice Brewer, reviewing the cases on this question, illustrates the sense in which the term "trust fund" has been used by the court in speaking of the assets of a corporation. "The same idea of equitable lien and trust," he says, "exists to some extent in the case of partnership property. Whenever, a partnership becoming insolvent, a court of equity takes possession of its property, it recognizes the fact that in equity the partnership creditors have a right to payment out of those funds in preference to individual creditors, as well as superior to any claims of the partners themselves. And the partnership property is, therefore, sometimes said, not inaptly, to be held in trust for the partnership creditors, or that they have an equitable lien on such property. Yet all that is meant by such expressions is the existence of an equitable right which will be enforced whenever a court of equity, at the instance of a proper party and in a proper proceeding, has taken possesion of the assets. It is never understood that there is a specific lien or direct trust." It is only in this limited and qualified sense that the assets of an insolvent corporation may in this State be properly said to be a trust fund for its creditors, for our

37

decisions that such a corporation may make preferences among its creditors is inconsistent with the idea of any specific lien or direct trust.

**4. Right of corporation to prefer its directors.** But it is contended that the funds of an insolvent corporation are in the hands of the directors to be disbursed on their unbiased and impartial judgment, and that when personal interest or individual gain is an element subserved through their preference, it should be set aside as being in contravention of sound equitable principles. To support this contention, counsel cite, among other cases, the well considered case of *Mallory* v. *Mallory-Wheeler Co.* 38 A. & E. Corp. Cases, 120. In that case the directors of a corporation undertook to use their official position for their own benefit, and to increase their salary, to the injury of the interests of the corporation. The familiar rule that no one acting in a fiduciary capacity shall be permitted to make use of that relation for his own benefit, at the expense of the interests of his principal, was invoked by the corporation, and applied by the court. There can be no doubt that the rule was properly applied in that case, for the directors are agents, and, to a certain extent, trustees of the corporation. They will not be allowed to enter into engagements in which they have a personal interest conflicting with the interests of their principal, whose interests they are bound to protect. The rule is of wide application, and applies, as was held in that case, to agents, partners, guardians, executors, and to trustees generally, as well as to the directors and managing officers of corporations. If personal engagements hostile to the interest of their principals are entered into by persons holding such fiduciary relations, they are not, in law, absolutely void, but voidable at the election of their principals. We do not see how that rule can apply in this case, for the party complaining here is not the corporation, but certain creditors of the

corporation.    The directors of a corporation are neither
trustees nor agents of the creditors, and they do not
occupy a fiduciary relation towards them, and therefore
the rule does not apply.

Although there are expressions in many of the cases
cited by counsel that seem to support the contention
that, even when an insolvent corporation may make pref-
erences, the directors of such corporation must be free
from personal bias in disbursing its assets and making
such preferences, yet we do not believe that such a
rule has any sound reason to rest upon.    The very fact
that preferences are made shows always that the party
making them is biased more or less towards the person
in whose favor they are made.    As long as preferences
are allowed to be made by insolvent debtors, they will
be dictated more or less by the personal bias of the per-
son making them.    The individual debtor, when insol-
vent, and forced to make an assignment, generally pre-
fers his friends, and often members of his own family.
The home creditor and neighbor is preferred at the ex-
pense of the non-resident one, perhaps equally deserving.
So, when this dry goods company came to make an as-
signment, it is not strange that, in making preferences,
it should favor the home creditors.    The contention that
the estate of an insolvent debtor should be disbursed by
some one acting without bias or personal interest would
apply almost as well to the case of an assignment by an
insolvent individual or partnership as to that of a cor-
poration, and, if adopted, would result in forbidding all
preferences in assignments by insolvent debtors, a result
that might be productive of much good, but it is one that
the courts must leave to the wisdom of the legislature to
accomplish ; for, to quote the language of Judge Cald-
well, in *Gould* v. *Railway Co.*, the right to make prefer-
ences ''is too firmly imbedded in our system of jurispru-
dence to be overthrown by judicial decision, and it can

no more be overthrown by the courts in its application to corporations than to individuals." *Gould* v. *Railway Co.* 52 Fed. 684. That was a case that arose in this State, and was controlled by the laws of this State, and, after an examination of the authorities, the court held that an insolvent corporation of this State may prefer its creditors, whether they be officers of the corporation or strangers. "The doctrine established by the best-considered cases, and by the Supreme Court of the United States," says Judge Caldwell, in his opinion in that case, "is that the mere fact that creditors of a corporation are directors and stockholders does not prevent their taking security to themselves as individuals to secure a *bona fide* loan of money previously made to such corporation, and used by it in conducting its legitimate business." The same question came in a recent case before the United States circuit court of appeals for the sixth circuit, and the same conclusion was reached. "It may be conceded," said Judge Taft, who delivered the opinion of the court, "that the trust relation justifies and requires courts of equity to subject preferences by an insolvent corporation of its own directors to the closest scrutiny, and places the burden upon the preferred director of showing, beyond question, that he had a *bona fide* debt against the corporation; but we do not see why, if a corporation may prefer one creditor over others, it may not prefer a director who is a *bona fide* creditor. Preferences are not based on any equitable principle. They go by favor, and as an individual may prefer, among his creditors, his friends and relatives, so a corporation may prefer its friends." *Brown* v. *Grand Rapids etc. Co.* 58 Fed. 286. The following cases sustain this position: *Buell* v. *Buckingham*, 16 Iowa, 284; *Garrett* v. *Plow Co.* 70 Iowa, 697; S. C. 29 N. W. 395; *Bank of Montreal* v. *Salt & Lumber Co.* 90 Mich. 345; S. C. 51 N. W. 512; *Hospes* v. *Car Co.* 48 Minn. 174;

S. C. 50 N. W. 1117; *Planters Bank* v. *Whittle*, 78 Va. 739; *Hallam* v. *Hotel Co.* 56 Iowa, 179; S. C. 9 N. W. 111; *Smith* v. *Skeary*, 47 Conn. 47; *Wilkinson* v. *Bauerle*, 41 N. J. Eq. 635; *Whitwell* v. *Warner*, 20 Vermont, 425; *Duncomb* v. *Railway Co.* 84 N. Y. 190.

The Supreme Court of Iowa, in *Garrett* v. *Plow Co.*, *supra*, after discussing at some length the question whether an insolvent corporation can prefer a debt due one of its directors, and deciding that it may do so, then considers the exact question involved in this case, that is, whether such a corporation may prefer a note to a person having no connection with the corporation, but upon which note a director is indorser, and disposes of it in the following words : " The note held by the savings bank presents a different and less difficult question. It was not given to a director or member of the corporation. Rand and other directors are indorsers or guarantors of the note. We know of no principle of law which will compel the bank to proceed against the indorsers or guarantors, and surrender the property it holds to other creditors."

A corporation will not, any more than an individual, be allowed to convey its property to defraud its creditors, but in the case at bar the evidence is conclusive that the debt due Worthen & Co. was an honest and *bona fide* debt for a large sum of money, which they in good faith loaned the dry goods company. They had no interest in or connection with the dry goods company, either as stockholders or directors. They had a perfect right to make the loan, and it was entirely legitimate for a director to indorse the notes as a personal guaranty that the money should be repaid. As the proof shows that F. P. Gray, who was the indorser on two of the notes for $3000 each, was insolvent, and that James A. Gray, who was the indorser on another one of the notes for $5000, had but little property in this State, it is plain that, in

making the loan, Worthen & Co. relied mainly on the faith and credit of the dry goods company. In other words, they expected to be paid by the dry goods company, and not by the indorsers.

While there is not wanting eminent authority to support the decree of the learned chancellor in this case, yet, after a consideration of the above authorities, and also of the cases cited by counsel for appellee, we have reached the conclusion that, the dry goods company having the right to make preferences, and Worthen & Co. having advanced it in good faith over twenty thousand dollars to be used in its business, that the fact that two of the directors were endorsers on notes for a portion of this sum did not, under the laws of this State, render the assignment preferring the debt due Worthen & Co. invalid.

Had we reached a different conclusion, it is doubtful if the equitable principle of equality could in this case have been applied in the distribution of the proceeds of the assets of the insolvent corporation. Such a conclusion, under the former adjudications of this court, would probably only have resulted in giving priority to a different set of creditors, not more meritorious or deserving than those preferred by the assignment. Many eminent text writers have severely condemned a state of law that admits of preferences by insolvent corporations, but their reproaches, in the language of counsel, "must fall on the legislative, not on the judicial, branch of the government." Our own legislature is no longer subject to such criticism, for the act of 1893 forbids such preferences by insolvent corporations, and this opinion, so far as it deals with the question of preferences by such corporations, is only declaratory of what the law was before the passage of that act.

The decree of the chancellor is therefore reversed, and the case remanded, with an order to distribute the proceeds of the assets of the dry goods company in accordance with the priorities named in the assignment.

Mr. Justice Battle dissented.